893 So.2d 746 (2005)
J. Robert WOOLEY in his Capacity as Acting Commissioner of Insurance, State of Louisiana
v.
STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, Honorable Murphy J. Foster in his Capacity as Governor of Louisiana, Anne Wise in her Capacity as Director of the Division of Administrative Law, and Allen Reynolds in his Capacity as Director of the Department of State Civil Service.
No. 2004-CA-0882.
Supreme Court of Louisiana.
January 19, 2005.
Rehearing Denied February 25, 2005.
*750 Stone Pigman Walther Wittmann L.L.C., William D. Treeby, Wayne J. Lee, Stephen G. Bullock, Sarah L. House, New Orleans, Vivian Broussard Guillory, Baton Rouge; Sutterfield & Webb, LLC, Cavid A. Webb, New Orleans, for applicant.
Charles C. Foti, Jr., Attorney General, Jill L. Craft, Assistant Attorney General, Colleen Noel Wertz, Assistant Attorney General; Charles H. Braud, for respondent.
M. Dwayne Johnson, Shannan Sweeney Rieger, Charles S. McCowan, Jr., Baton Rouge, for amicus curiae Louisiana Chemical Association.
Alfred William Speer, II, Thomas Taylor Townsend, Natchitoches, for amicus curiae Louisiana Legislature.
Mary Florence Quaid, Baton Rouge, Alfred William Speer, II, for amicus curiae Louisiana House of Representatives.
Jerry J. Guillot, Baton Rouge, Glenn Alan Koepp, for amicus curiae Louisiana Senate.
Paul R. Baier, for amicus curiae Paul R. Baier.
KIMBALL, Justice.
At issue in this appeal is the constitutionality of the provisions of Act 739 of 1995 and Act 1332 of 1999, which, inter alia, create the Division of Administrative Law (hereinafter "DAL"), transfer the authority to conduct adjudications for certain agencies to the DAL, provide that the agencies shall have no authority to override the decision or order of the administrative law judge (hereinafter "ALJ") employed by the DAL, and preclude the *751 agencies from seeking judicial review of adverse rulings by the ALJs. Finding no violation of any constitutional provision asserted by the Commissioner of Insurance, we reverse the judgment of the district court to the contrary.

FACTS AND PROCEDURAL HISTORY
In February 1996, State Farm Fire and Casualty Insurance Company (hereinafter "State Farm") filed a Rental Condominium Unitowners' policy form (hereinafter "RCU form") with the Commissioner of Insurance (hereinafter "Commissioner") for his review and approval pursuant to La. R.S. 22:620.[1] State Farm was subsequently informed that the filing had been disapproved for use in Louisiana because its Representations and Warranties provision did not comply with applicable sections *752 of the Insurance Code.[2] State Farm requested reconsideration of the issue and, after several meetings between State Farm representatives and staff members of the Louisiana Department of Insurance, State Farm was informed by letter that the RCU form was still disapproved for use in Louisiana.
State Farm then requested an adjudicatory hearing which was subsequently conducted by an ALJ employed by the DAL. After a hearing held on May 18, 1998, the ALJ specifically found that the RCU form complied in wording and meaning with the applicable law and issued a decision and order in favor of State Farm, ordering the Department of Insurance to approve the RCU form as submitted by State Farm.
Thereafter, the Commissioner filed a petition for judicial review of the ALJ's order in the Nineteenth Judicial District Court. In his petition, the Commissioner asserted the order of the ALJ was erroneous and requested that the district court uphold the Commissioner's decision to disapprove the RCU form submitted by State Farm. State Farm subsequently filed a peremptory exception of no right of action, arguing that the Commissioner had no right to judicial review of the ALJ's ruling based upon the recently enacted Act 1332 of 1999, which was codified by La. R.S. 49:964(A)(2)[3] and La. R.S. 49:992(B)(3).[4] Following a hearing, the district court granted State Farm's peremptory exception of no right of action and dismissed the Commissioner's petition for judicial review with prejudice.
The Commissioner appealed. The court of appeal affirmed the judgment of the district court, finding that the district court committed no error in granting the exception of no right of action and, further, that it did not err in dismissing the Commissioner's suit without allowing him to amend his petition to assert the unconstitutionality of the Act. Brown v. State Farm Fire & Cas. Co., 00-0539 (La.App. 1 Cir. 6/22/01), 804 So.2d 41. In reaching its decision, the court of appeal reasoned that the Department of Insurance is a juridical person, and, as such, does did not have the same rights as an individual:
Louisiana Constitution art. 1, § 22 guarantees the Department of Insurance through its commissioner an adequate remedy by due process of law and justice for injury to the Department or its rights. As a matter of law and of Constitutional interpretation, however, we cannot say the legislature has afforded the Department of Insurance an inadequate remedy when the Department as a juridical person has no more rights than the law allows. We do not believe the Louisiana Constitution imbues a juridical person, the Department of Insurance through its commissioner, with the same constitutionally protected rights reserved to the individual and for the good of the whole. See art. 1, § 1 and art. 1, § 24 of the Louisiana Constitution *753 (1974). The Louisiana Constitution provides in art. 1, § 1 that government is founded on the will of the people alone. The Legislature, speaking for the people, has elected to limit the right to seek judicial review by the Department of Insurance under the circumstances of this case.
Id. at p. 6, 804 So.2d at 45-46 (footnote omitted).
The Commissioner also argued that he should have been allowed to amend his petition to challenge the constitutionality of La. R.S. 49:964(A)(2) on the grounds that the Louisiana Administrative Procedure Act (hereinafter "LAPA") unconstitutionally usurps his powers and that the LAPA usurps power constitutionally vested in the judiciary. The court rejected this argument, stating:
While the Commissioner alleges he should have been allowed to amend his petition to allege a usurpation of the rights of the judiciary, nothing in the record or briefs explain how he could successfully amend a petition for judicial (appellate) review to cumulate or substitute some type of ordinary proceeding, nor is the permissibility of such amendment apparent to this court....
Where it is not apparent how the grounds of State Farm's objection of no right of action can be removed by amendment, we cannot conclude the trial court erred in failing to allow the Commissioner to amend his petition to allege the unconstitutionality of the LAPA. We are not obligated to speculate on how the Commissioner's petition might be successfully amended. We also observe that the Commissioner appears to have an adequate remedy at law in this regard by filing a declaratory judgment action or some other type proceeding.
Id. at pp. 7-8, 804 So.2d at 47.
This court denied the Commissioner's application for a writ of certiorari. Brown v. State Farm Fire & Cas. Co., 01-2504 (La.12/7/01), 803 So.2d 37.
Thereafter, on December 10, 2002, the Commissioner filed the instant "Petition for Preliminary and Permanent Injunctions and Petition for Declaratory Judgment" against State Farm, the Honorable Murphy J. Foster in his capacity as Governor of Louisiana (hereinafter "Governor"), Anne Wise in her capacity as Director of the Division of Administrative Law and Allen Reynolds in his capacity as Director of the Department of State Civil Service (hereinafter jointly "DAL"). Essentially, the Commissioner sought preliminary and permanent injunctive relief to prohibit enforcement of Act 739 of 1995 and Act 1332 of 1999, to quash and enjoin the ALJ ruling approving the RCU policy, and to bar State Farm's use of the RCU policy until it complies with the law and has been approved by a lawful order of the Commissioner or a final decision has been rendered on the merits by the judicial branch. The Commissioner also sought a declaratory judgment that Act 739 of 1995 and Act 1332 of 1999 are unconstitutional. Specifically, the Commissioner alleged that Act 739 of 1995 is unconstitutional in that it: (1) violates the separation of powers article by vesting judicial power in executive branch employees; (2) violates La. Const. art. V, sec. 22, which mandates an elected judiciary by providing for the hiring of non-elected judges; (3) divests the district courts of original jurisdiction in violation of La. Const. art. V, sec. 16 by creating a new and independent judiciary within the executive branch without any limitation on the matters which may be heard by civil service employees and that it divests the judicial branch of its inherent power to decide matters involving questions of law; (4) violates La. Const. art. V, sec. 1 by the unfettered transfer of judicial power to the *754 executive branch; (5) further violates La. Const. art. V, sec. 1 by the creation of a court which is not authorized by the constitution; (6) confers power vested in an elected official of a constitutionally-created office to a non-elected ALJ; and (7) usurps powers belonging to the judicial branch and transfers those powers to the executive branch. The Commissioner also alleged that Act 1332 of 1999 is unconstitutional in that it: (1) violates the separation of powers article by vesting judicial power in executive branch employees; (2) violates La. Const. art. II, sec. 1 because it does not provide for a check on the powers exercised by the executive court; (3) violates La. Const. art. II, secs. 1 and 2 because it diminishes the power of the judicial branch to decide matters involving questions of law; (4) violates La. Const. art. V, sec. 2 by stripping the judicial branch of its inherent power to issue writs of certiorari and review if the person seeking review is the agency; and (5) violates La. Const. art. I, secs. 2, 3, and 22 in that it denies the citizens and insurance consumers, through the elected Commissioner, access to the courts.
After various hearings and a trial on the Petition for Preliminary and Permanent Injunctive Relief and Declaratory Judgment, the district court granted permanent injunctive relief and entered declaratory judgment in favor of the Commissioner. The judgment of the district court states, in pertinent part:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that a DECLARATORY JUDGMENT is rendered in favor of Petitioner and against Defendants in the following particulars:
Declaratory Judgment is hereby rendered pursuant to La. C.C.P. Art. 1871 through 1883, in favor of Petitioner and against the Defendants declaring Act. No. 739 of the 1995 Regular Session of the Louisiana Legislature unconstitutional, null and void in that the Act violates the separation of powers article, Article II, Section 1 and Section 2, which expressly provides that the powers of government are divided among three branches: the executive, the legislative and the judicial branch; and further, that no branch, nor any person holding office in one of them, shall exercise any of the power belonging to the other branches, by vesting judicial power in executive branch employees; and further, the Act violates Article V, Section 22, which mandates an elected judiciary, by providing for the hiring of non-elected judges; by providing that such executive judges are civil service employees and as such cannot be removed from their position except for cause as provided for in the laws governing such employees and by providing that the opinions rendered by such executive judges are specifically exempt from serving as grounds for removal by the appointing authority thereby rendering such executive judges completely and totally unaccountable to the electorate for the decisions they render even as to matters involving questions of law and public policy; and further, the Act divests the district courts of original jurisdiction in violation of Article V, Section 16 by creating a new and independent judiciary within the executive branch without any limitation on the matters which may be heard by the civil service employees employed as judges, more particularly, the Act divests the judicial branch of its inherent power to decide matters involving questions of law; and further, the Act violates Article V, Section 1, which provides that the judicial power of the State is to be vested in the Supreme Court, Courts of Appeal, District Courts and other courts as may be authorized by the constitution, by the unfettered *755 transfer of judicial power to the executive branch, and the Act further violates Article V, Section 1 by the creation of a court which is not "a court authorized by the constitution"; and further, the Act confers power vested in an elected official and holder of a constitutionally created office to a non-elected administrative law judge. The divestiture of power delegated to the Commissioner of Insurance is a violation of Article IV, Section 1B which provides in pertinent part that the functions, powers, duties and responsibilities allocated by the constitution to the Commissioner of Insurance shall not be affected or diminished except as authorized by Article IV, Section 20, which does not provide for the transfer of any of the powers of the Commissioner of Insurance to a division of the Department of State Civil Service. The power of the Legislature to enact laws is controlled by the parameters set forth in the Constitution. By enacting Act 739, the Legislature has usurped powers belonging to the judicial branch and transferred those powers to the executive branch. The Legislature is not empowered to enact acts that diminish the power of a co-equal branch of government. Therefore, Act 739 is ultra vires, and any actions taken pursuant to its provisions are null and void and of no effect.
Declaratory Judgment is hereby rendered pursuant to La. C.C.P. Arts. 1871 through 1883 in favor of Petitioner and against the Defendants declaring that Act No. 1332 of the 1999 Regular Session of the Louisiana Legislature is unconstitutional, null and void in that the Act violates the separation of powers article, Article II, Section 1 and Section 2, which expressly provides that the powers of government are divided among three branches: the executive, the legislative and the judicial branch; and further, that no branch, nor any person holding office in one of them, shall exercise any of the power belonging to the other branches, by vesting judicial power in executive branch employees; more particularly, the Act is in violation of Article II, Section 1 because it does not provide for a check on the powers exercised by the executive court, by making its rulings non-reviewable by the judicial branch, in those circumstances involving a ruling that is adverse to the agency-party; and further, the Act is in violation of Article II, Section 1 and 2 because it diminishes the power of the judicial branch to decide matters involving questions of law; and further, the Act is in violation of Article V, Section 2 insofar as it precludes the judicial branch from exercising its inherent supervisory power to issue writs of certiorari and review, if the person seeking review of a ruling is the agency-party to the administrative proceeding, and precludes the judicial branch from issuing such writs ex proprio motu, impinging on the inherent power of the judicial branch to exercise oversight over inferior tribunals; and further the Act is in violation of Article I, Section 2, Article I, Section 3 and Article I, Section 22 in that it denies the citizens and insurance-buying consumers of Louisiana, through the party duly elected to represent and protect their interests and to take all steps necessary thereto, access to the courts, a right not denied to foreign insurers. Therefore, Act 1332 is utlre vires [sic], and any actions taken pursuant to its provisions are null and void and of no effect.
Declaratory Judgment is hereby rendered pursuant to La. C.C.P. Arts. 1871 through 1883 in favor of Petitioner and against the Defendants declaring that the ruling of the Administrative *756 Law Judge, Division of Administrative Law is ultre vires [sic], null and void and of no effect having been rendered by an entity without constitutional authority to make final, binding decisions on questions of law and public policy; and further, it is hereby declared, adjudged and decreed that the phrase "this entire policy shall be void" and the phrase "you or any other insured" in lieu of "the insured" as applied to all perils and coverage sections is contrary to law, more specifically, LSA-R.S. 22:636.2, LSA-R.S. 22:691E and LSA-R.S. 22:691.2 in that such language is less beneficial to the insured.
IT IS FURTHER ORDERED, ADJUDGED AND DECREEDED [sic] that PERMANENT INJUNCTIVE [sic] RELIEF is granted in favor of the Petitioner and against the Defendants in the following particulars:
Defendants are hereby permanently restrained, enjoined and prohibited from carrying out, implementing, enforcing, and/or utilizing the provisions of Acts 1995, No. 739 and Act 1999, No. 1332 as regards matters arising from the Office of the Commissioner of Insurance and/or Louisiana Department of Insurance, insofar as the Division of Administrative Law is without authority to interpret laws governing the regulation of insurance, and further is without authority to order the Commissioner and/or the Department of Insurance to comply with its interpretations of law and/or public policy in that such decisions are to be made by persons who are accountable to the electorate and in the final instance by the judicial department, which is the branch of government vested by Article I of the Louisiana Constitution with the power to declare what the law is.
IT IS FURTHER ORDERED, ADJUDGED AND DECREEDED [sic] that the Order of the Administrative Law Judge, Division of Administrative Law finding as a matter of law that State Farm's RCU policy is a "standard fire policy" and ordering the approval of the policy is hereby quashed and permanently restrained and enjoined.
IT IS FURTHER ORDERED, ADJUDGED AND DECREEDED [sic] that Defendant, State Farm, is hereby permanently restrained, enjoined and prohibited from issuing, delivering or otherwise using the RCU form in Louisiana until such policy has the policy [sic] is brought into compliance with the law and has been approved by order of the Commissioner of Insurance as provided for in LSA-R.S. 22:620.
In oral reasons for judgment, the district court explained its judgment as follows:
On June 22, 2001 the Court of Appeal, First Circuit issued a ruling finding that pursuant to Acts 1999, No. 1332, amending and reenacting LSA-R.S. 49:964 and 49:992, the [Commissioner] was an agency party to the proceeding before the [DAL] and therefore did not have a right to seek judicial review of an adverse ruling, even though those matters involved only questions of law, and that the [Commissioner] had adequate remedy at law in that he could file a declaratory judgment challenging the statutory scheme creating the [DAL] and request an order enjoining the order of the [ALJ] to approve the State Farm RCU policy.
In its ruling, the Court of Appeal, First Circuit noted that it was within the legislative scheme to allow a juristic person such as State Farm the right of appeal but to deny the agency represented by a duly elected officer the right of appeal, directing its intent to put finality to the proceeding.

*757 The evidence discloses and the court finds that Act 739 was adopted in the 1995 Regular Session of the Louisiana Legislature. The Act allowed the [Governor] to appoint a Director, defendant herein Ann Wise, and authorized her to employ administrative law judges. There was no requirement that the administrative law judges have expertise or experience with respect to any area of regulation.
The court further finds that the administrative law judges, of which there are thirteen, were not prior to their appointment required to be active or retired judges nor active or retired attorneys but were subject to all of the rights and benefits and emoluments of employeeship under the civil service rule after a two-year probationary period.
The court further finds that of the thirteen administrative law judges duly appointed, that nine were, in fact, or had been attorneys. Four, however, had been employed by the Department of Public Safety and Corrections as law enforcement officers, not having law degrees or other qualifications with respect to dispute resolution, arbitration, mediation or counseling. They were, nonetheless, "grandfathered" in by the executive.
Also with respect to Section 992 of the Act, with the exception of certain expressly named agencies, all adjudicatory functions of the various state agencies were transferred to the [DAL] effective on October 1, of 1996, divesting each such agency of its authority to issue final decisions or orders supplanting their authority to override the decision of an administrative law judge employed by the [DAL].
The Louisiana legislature enacted Act 1332 in 1999 to bar an agency party to a proceeding held before the [DAL] from seeking judicial review of an adverse ruling, including cases which only involve questions of law.
As part of the executive branch, an administrative agency is responsible for implementing and enforcing specific areas of law within its expertise, as well as final adjudicatory decisions or orders involving elements of policy making and exercising the discretion committed to the administrative agency in pursing the goals for which it is responsible.
Consequently, it is sometimes necessary for the exercise of a quasi-judicial power within the executive branch to be based upon a need for an agency's specialized knowledge and expertise in the area, subject to its regulatory jurisdiction. The agency has the full authority to delegate the conducting of adjudicatory hearings to a subordinate officer because the agency head is responsible for making the ultimate decision.
By enacting Act 739 of 1995, the legislature created an insular body of non-elected judges within the civil service department in the executive branch with the authority to render final adjudicatory decisions or orders with respect to regulatory law where they had no specialized knowledge, expertise or experience, nor were they accountable to the electorate for the decisions they made in cases before them, all without judicial review in the instances where the decisions were adverse to the agency.
The court finds, having conducted a hearing, a trial, and having, at the request of the [DAL], visited that agency, that the [DAL] judges hold themselves out as judges. There is a judge's entrance. Some of them appear in the Baton Rouge Bar Association booklet in robes. They address each other as judges, and they exercise power that is reserved to the judiciary without being *758 subject to the Supreme Court in its judicial functions, and without being subject to the judicial counsel for its quasi-judicial functions.
They are not accountable to the public because they have not been elected, but are under the tutelage and direct supervision of the governor and his other subordinates.
This court further finds that the officer of the [Commissioner] is, indeed, a constitutionally created office vested with the power and obligation to regulate the business of insurance, which has been defined as effected with the public interest. He is required and takes all necessary steps to protect the public interest.
The court further finds that pursuant to the decision of an [ALJ], the commissioner was ordered to approve a policy that contained, in his view, provisions in violation of the law contrary to his sworn duty to uphold and administer the provisions of the code to protect the public interest.
Defendants have appealed directly to this court.

PRELIMINARY MATTERS
In order to properly analyze the many issues presented by this case, we must first discuss the creation of the office of the Commissioner of Insurance, and the history of the Administrative Procedure Act and ALJs.

The Commissioner of Insurance
Prior to 1956, the Secretary of State was the ex-officio insurance commissioner of Louisiana. Employers-Commercial Union Ins. Co. v. Bernard, 303 So.2d 728, 730 (La.1974). The 1921 Constitution, however, gave the legislature the power to create a separate office for the insurance commissioner. La. Const. art. V, sec. 20 (1921). See also id. By Act 200 of 1956, the legislature exercised that power, creating for the first time the office of the Commissioner of Insurance and charging him with the duty of administering the provisions of the Insurance Code. G. Frank Purvis, Jr., Legislation Affecting Insurance, 17 La. L.Rev. 64 (1956). Act 200 transferred the duties and functions relating to insurance formerly vested in the Secretary of State to the newly created Commissioner of Insurance. The Act provided that the Commissioner would initially be appointed by the Governor with the consent of the Senate, but would thereafter be elected beginning with the general state elections for state officials in 1960 and then every four years thereafter. Subsequent to the passage of Act 200, the legislature in 1958 proposed a constitutional amendment to add the Commissioner of Insurance to the list of constitutionally elected officers, which, if passed, would have given constitutional ratification to Act 200. William C. Havard, The 1958 Proposals to Amend the Louisiana Constitution, 19 La. L.Rev. 128, 131 (1958). However, the amendment, which was proposed by Act 560 of 1958 was rejected by the voters in the general election of 1958. Id. at 128. See also William C. Havard, The 1960 Proposals to Amend the Louisiana Constitution, 21 La. L.Rev. 109, 113 n. 11 (1960).
By Act 609 of 1960, the legislature again proposed a constitutional amendment to add the Commissioner of Insurance to the constitutional elective offices. Id. at 113. This time the amendment was approved by the voters and the Commissioner of Insurance was created as a constitutionally elective officer in the executive branch at that time. Thus, La. Const. art. V, sec.1 (1921) was amended to provide in pertinent part:
The executive department shall consist of a Governor, Lieutenant Governor, Comptroller, Treasurer, Secretary of *759 State, Register of the Land Office, Commissioner of Agriculture and Immigration, Commissioner of Conservation, Commissioner of Insurance and Custodian of Voting Machines....
(Emphasis added). The 1921 Constitution provided that the legislature could not consolidate the office of the Commissioner of Insurance with any other office and stated that the Commissioner of Insurance was to be elected for a term of four years. La. Const. art. V, secs. 1 and 18 (1921). The 1921 Constitution, however, did not specify any duties or functions of the Commissioner of Insurance; instead, the duties and functions were statutorily provided. See Records of the Louisiana Constitutional Convention of 1973: Committee Documents, Vol. XI, p. 174 (Exhibit F).
At the Constitutional Convention of 1973, the delegates determined to propose to the voters that the office of the Commissioner of Insurance be continued as a constitutional elective office. There was strenuous debate, however, on the issue of whether the duties and functions of the Commissioner should be specified in the new constitution, or whether the duties and functions should continue to be only statutorily defined. See Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. VI, pp. 644-63. For example, delegates rejected the following proposal:
Section 11. Powers and Duties of the Commissioner of Insurance
Section 11. There shall be a department of insurance headed by the commissioner of insurance, who shall administer the insurance code. The department shall exercise such functions and the commissioner shall have such other powers and perform such other duties as may be authorized by this constitution or provided by statute.
Id. at p. 644. Delegate Stagg explained the several amendments that were to be offered as follows:
The difference between this proposal and the reason why there are three amendments before you instead of just one, is because there is a philosophical dispute going on among those who propose the amendments. The other sets of amendments gives to the insurance commissioner the responsibility for regulatory and other functions. A third one says that he shall administer the rate-making and regulatory functions related to insurance. This is the difference between or among the amendments. One of them permits the insurance commissioner simply to administer the insurance code and that the regulatory and rate-making matters are carried on like they are now by the casualty and surety rating bureau. This convention will have to decide how we shall administer the insurance because the proposers of these amendments have not agreed.
Id. After considerable debate on the above proposal, it was rejected, in part because many delegates believed the amendment did not give sufficient rate-making power to the Commissioner, while other delegates apparently believed the wording contained in the proposal was too broad. Id. at pp. 644-49. Two other proposals that more specifically enunciated the powers of the Commissioner were similarly rejected after lengthy debate. Id. at pp. 649-53, 657-61. One of the rejected proposals would have given the Commissioner the constitutional authority to "administer the Insurance Code" and made him responsible "for all regulatory and other functions of the state relating to insurance and all of its phases." Id. at p. 649. Another of the rejected proposals would have given the Commissioner the authority to "administer the insurance *760 code" and made him responsible "for all rate making, regulatory and other functions of the state relating to insurance." Id. at p. 657.
The proposal that was finally adopted by the delegates, and ultimately approved by the voters, stated:
Section 12. Powers and duties of the commissioner of insurance
Section 12. There shall be a department of insurance headed by the commissioner of insurance. The department shall exercise such functions and the commissioner shall have such powers and perform such duties as may be authorized by this constitution or provided by statute.
Id. at p. 654. In explaining this amendment, delegate Casey stated:
Let's lay it on the line that as this amendment is present right now, today, the legislature and the legislature alone, unless we put something else someplace in this constitution, will enunciate those duties and functions of the commissioner of insurance and will enunciate the functions of the department of insurance. That is what the law is today and has been previously and frequently mentioned, that really is all that today's constitution does is establish a commissioner of insurance and says he's elected for four years. The entire functions are set forth only by statute and by law. I submit to you that this is the simplest and I would hope the best method of accomplishing this end. If you wish, on the other hand, that the commissioner of insurance would have regulatory functions, let it be clearly understood that you don't vote for my amendment.
Id. The debate continued, in part, as follows:
Delegate Arnette: So, if your amendment is adopted, what we've got is a situation of a statewide elected official with no power. Is that as it is now? ...
Delegate Casey: Mr. Arnette, if this amendment is adopted, it merely says that the legislature by statute will establish the duties and functions of that officer and of that department. This is done in many, many other cases, that we are giving to the legislature the prerogative to establish the duties and functions of certain activities or agencies of the state.
* * *
Delegate Juneau: Mr. Chairman and fellow delegates ... Do you want to elect a commissioner of insurance who really doesn't have the true responsibility with regard to insurance and that's rates? That's what it's really all about.... If you adopt the amendment, you have in essence a commissioner of insurance who really doesn't have the authority.... We've got them hanging in space with no authority.
* * *
Delegate Jenkins: Mr. Chairman, delegates, ... Well, our theory is if we give all of this power to one man, he will, as many people have said, be an absolute czar. He will be allowed to run on a plank promising to the people all sorts of things which he can deliver only by seriously injuring or curtailing the services of this occupation, this profession. You need in something with such tremendous power some system of checks and balances.... Let's have a commissioner of insurance elected by the people, but let's give the legislature some authority to alter his functions and responsibilities as changing times and new information dictate, rather than once and for all setting him up as a czar over this industry.
*761 Id. at pp. 654-55. At the conclusion of these and other remarks, the amendment was adopted.
Consequently, La. Const. art. IV, sec.11, entitled "Commissioner of Insurance; Powers and Duties," now provides:
There shall be a Department of Insurance, headed by the commissioner of insurance. The department shall exercise such functions and the commissioner shall have powers and perform duties authorized by this constitution or provided by law.

The Administrative Procedure Act and ALJs
Congress enacted the federal Administrative Procedure Act (hereinafter "APA") in 1946. I KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 1.4, at 14 (3d ed.1994). The major effects of the APA were threefold: (1) to fulfill the political will for reform; (2) to improve and strengthen the administrative process; and (3) to maintain the basic limits on judicial review of administrative action. KENNETH CULP DAVIS, HANDBOOK ON ADMINISTRATIVE LAW § 2, at 9 (1951). The APA represented a compromise between those who believed the role of the hearing officer should be an integrated part of the process of executive branch enforcement, and those who believed hearing officers should follow a more formal judicial model. Jay S. Bybee, Agency Expertise, ALJ Independence, and Administrative Courts: The Recent Changes in Louisiana's Administrative Procedure Act, 59 La. L.Rev. 431, 443 (1999). Federal ALJs are under the control of the agencies that hired them. Id. at 444.
In 1961, the National Conference of Commissioners on Uniform State Laws published the Model State Administrative Procedure Act, which was based upon the federal APA. Id. Louisiana's Administrative Procedure Act was adopted in 1967 and is based on this 1961 Model State Act. Id. at 444-45. The 1961 Model State Act made no recommendations regarding ALJs; consequently, Louisiana's first enactment of the LAPA Act included no reference to hearing officers. Id. Thus, prior to the recent amendment at issue, the original role of ALJs in the LAPA was implicit rather than explicit. Id. at 452. Additionally, ALJs were employed by their respective agencies in the executive branch of our government and worked exclusively for that agency. Id. at 431.
In 1995, the legislature enacted Act 739, which created the Division of Administrative Law in the Department of State Civil Service. The Act provides that the DAL shall commence and handle all adjudications in the manner required by the LAPA, that the ALJ shall issue the final decision or order and the agency shall have no authority to override the decision or order, that the governor shall appoint, and the Senate confirm, a director for DAL, who, in turn, shall employ the ALJs, and that the current ALJs employed by the various affected agencies shall be transferred to and employed in the DAL. Additionally, Act 1332 of 1999 amended the law to provide that no agency or official thereof shall be entitled to judicial review of an adjudication.

DISCUSSION
As outlined above, it is the two recent amendments that are alleged to be, and have been declared, unconstitutional. Statutes, of course, are presumed constitutional and the constitutionality of a statute should be upheld whenever possible. State Civil Serv. Com'n v. Department of Pub. Safety Dir., 03-1702, p. 7 (La.4/14/04), 873 So.2d 636, 641. Because it exercises the entire legislative power of the state, the legislature is permitted to *762 enact any legislation the state constitution does not prohibit. Id. Because of the presumption of a statute's constitutionality, the party challenging the statute bears the burden of proving its unconstitutionality. Id.
Initially, we note that the judgment of the district court appears to have declared Act 739 of 1995 unconstitutional in its entirety. While this Act created the DAL, specified that the DAL shall commence and handle all adjudications as prescribed by the LAPA, and transferred certain employees who had previously handled adjudications from affected agencies to the DAL, it did not alter the types of decisions made by executive branch employees or the manner in which the adjudications themselves are conducted.[5] A review of the history of the LAPA and ALJs in Louisiana and this court's prior jurisprudence reveals that the legislature's creation of a system of administrative law, and its ALJs, to adjudicate regulatory matters is not per se unconstitutional. Similarly, we find that the creation of the DAL and its central panel of ALJs is not per se unconstitutional.
The district court declared Act 739 unconstitutional on various grounds, including the fact that the Act violates La. Const. art. V, sec. 1[6] by vesting judicial power in executive branch employees, that it violates La. Const. art. V, sec. 22[7] by providing for the hiring of non-elected judges in the executive branch, and that it violates La. Const. art. V, sec. 16[8] by divesting the district courts of original jurisdiction by creating a new and independent judiciary within the executive branch and by divesting the judicial branch of its inherent power to decide matters involving questions of law. Additionally, the district court determined that the Act violates La. Const. art. II, secs. 1 and 2[9], the separation of powers article. The thrust of these conclusions, and consequently the issue to be determined, revolves around whether the Act calls for the exercise of judicial power by the executive branch.
A distinct line among the powers of the judicial, legislative, and executive branches has never been drawn with precision. State v. Umezulike, 03-1404, p. 4 (La.2/25/04), 866 So.2d 794, 797; Safety Net for Abused Persons v. Segura, 96-1978, p. 4 (La.4/8/97), 692 So.2d 1038, 1041. *763 This is because the practical aspects of governing require flexibility and make some overlap unavoidable. Safety Net at p. 4, 692 So.2d at 1041. Because of the need for flexibility and the inevitability of overlap, this court will cooperate with the legislative and executive branches unless such cooperation interferes with the effective administration of justice. Id. La. Const. art. II, secs. 1 and 2 divide the powers of government into three separate branches and provide that no one branch shall exercise power belonging to either of the other branches. In contrast to legislative power, jurisdiction of the courts of the judicial branch and their judicial power traditionally flow from constitutional grants. Umezulike at p. 4, 866 So.2d at 797. Article V, sec. 1 vests the judicial power of the state in the courts making up the judicial branch of government, the supreme court, courts of appeal, district courts, and other constitutionally-authorized courts. Further, La. Const. art. V, sec. 22(A) provides that all judges shall be elected. Finally, Article V, sec. 16 grants district courts original jurisdiction of all civil and criminal matters and appellate jurisdiction as provided by law. While a court's jurisdiction and judicial power traditionally flow from these constitutional grants, Article II, secs. 1 and 2 also establish the basis for inherent judicial powers which are not specifically enumerated in the constitution. Id. at pp. 4-5, 866 So.2d at 798.
The authority of ALJs is provided by La. R.S. 49:994(D), which states:
D. The administrative law judge shall have the authority to:
(1) Regulate the adjudicatory proceedings assigned to him.
(2) Issue such decisions and orders as are necessary to promote a fair, orderly, and prompt adjudication.
(3) Exercise those powers vested in the presiding officer in the Administrative Procedure Act.
(4) If the parties do not object, conduct adjudications or conferences in person or by telephone, video conference, or similar communication equipment, and administer oaths in such proceedings.
(5) Continue an adjudication in any case when a party or subpoenaed necessary witness has been called to service in the uniformed services as defined in R.S. 29:403, including but not limited to a proceeding pursuant to R.S. 32:667.
In the instant case, the ALJ conducted an adjudication to determine whether State Farm's RCU policy form complied with applicable sections of the Insurance Code and issued a decision and order granting relief to State Farm and ordering the Department of Insurance to approve the RCU policy form as submitted by State Farm. It does not appear that the ALJ exercised any authority beyond that granted him by La. R.S. 49:994(D). We have previously recognized that administrative agencies are a governmental hybrid whereby they exercise powers similar to those exercised by all three branches of our government. Albe v. Louisiana Workers' Comp. Corp., 97-0581, p. 8 (La.10/21/97), 700 So.2d 824, 828. While the adjudicative and fact-finding powers exercised by the ALJ mimic those exercised by Article V courts, see id., we conclude that they occurred in the regulatory context and were a quasi-judicial function rather than a strictly judicial function. Therefore, we find the Act does not confer judicial power on an executive branch agency.
A quasi-judicial function is one that involves the use of some discretion, but is of a different type than a judicial decision. Hood Motor Co., Inc. v. Lawrence, 320 So.2d 111, 115 n. 4 (La.1975). *764 The function is somewhere between strictly judicial and ministerial. Id. The legislature has frequently vested quasi-judicial authority in administrative agencies. In the Matter of American Waste & Pollution Control Co., 588 So.2d 367, 369 (La.1991). Likewise, Congress has delegated quasi-judicial powers to various federal administrative agencies, and the exercise of these quasi-judicial powers has been held not to violate the constitutional requirement of separation of powers among branches of government. See Pope v. State, 99-2559, p. 11 (La.6/29/01), 792 So.2d 713, 719-20. In the instant matter, we find that Act 739 authorizes the ALJs employed by the DAL to exercise quasi-judicial power, and, specifically, that in the particular adjudication at issue, the ALJ exercised quasi-judicial, rather than judicial, power when he reviewed the submitted RCU policy form to determine whether it complied with applicable portions of the Insurance Code because it occurred in the regulatory context. Such a determination has traditionally been vested in the executive branch and is not a function that lies solely within the judiciary.
The exercise of quasi-judicial functions does not make ALJs Article V judges. See Albe at p. 8, 700 So.2d at 828. The facts so heavily relied upon by the district court that the ALJs are often referred to as judges, that some wear robes, and that they use a "judge's entrance" does not automatically vest them with the exercise of judicial power. The testimony in the record reveals that ALJs do not have the power to enforce their decisions and orders, a power that unquestionably lies in Article V courts. The ALJs simply are not constitutionally allowed to exercise the judicial power of the state and Act 739 does not impermissibly attempt to authorize the exercise of judicial power. The ALJs make administrative law rulings that are not subject to enforcement and do not have the force of law.
Turning to the issue of whether Act 739 divests the district courts of original jurisdiction, we find that because the approval of insurance policy forms is not a civil matter within the meaning of La. Const. art. V, sec. 16(A), they are not within the scope of the district courts' constitutional grant of original jurisdiction. Original jurisdiction is jurisdiction in the first instance and specifies the adjudicative tribunal in which the initial adjudication is made. Moore v. Roemer, 567 So.2d 75, 79 (La.1990). The legislature is without authority to divest district courts of original jurisdiction over all civil matters. Id.
In Moore v. Roemer, this court addressed the constitutionality of an Act that vested in administrative hearing officers the "exclusive original jurisdiction" to adjudicate workers' compensation claims. 567 So.2d at 77. We concluded the Act was an unconstitutional divestiture of the district courts' original jurisdiction over all civil matters, in part because "[w]orker's compensation claims, from their inception through the Constitutional Convention of 1974 were brought at the district court level." Id. at 80. We reasoned that because workers' compensation claims had always been brought in the district courts, the delegates and the voters knew that workers' compensation was a civil matter over which the district courts had original jurisdiction. Id. Thus, we concluded that claims for workers' compensation were civil matters contemplated by La. Const. art. V, sec. 16(A) and therefore the provision of the Act that vested exclusive original jurisdiction to adjudicate workers' compensation claims in administrative hearing officers was unconstitutional.
Similarly, in Pope v. State, this court was faced with the issue of whether a Department of Public Safety and Corrections *765 (hereinafter "DOC") Rule that provided for an administrative remedy procedure for handling tort claims by inmates unconstitutionally divested the district courts of original jurisdiction. 99-2559 at p. 4, 792 So.2d at 716. We concluded that the Rule, which allowed the DOC officials to "take cognizance of a tort claim by an offender at the inception of the action, try the claim, and pass judgment on the law and the facts of the action...," gave the officials the right to exercise original jurisdiction to the exclusion of the district court. Id. at p. 9, 792 So.2d at 718. Again, this conclusion was based in part on the fact that the district courts have historically exercised original jurisdiction in tort actions and were doing so when the 1974 Constitution was adopted. Id. at p. 10, 792 So.2d at 719. We held that the statute at issue was therefore an invalid attempt to alter the original jurisdiction of the district courts by legislative act. Id. at p. 11, 792 So.2d at 719.
In contrast to the two cases discussed above, in American Waste we were faced with the issue of whether the legislature could validly provide that appeals of final decisions or orders of the Department of Environmental Quality (hereinafter "DEQ") in a permit or enforcement action would bypass the district court to lodge directly in the court of appeal. 588 So.2d at 368. In concluding that the legislative provision was constitutionally valid, we disagreed with the court of appeal's conclusion that the statute at issue was in contravention of the grant of original jurisdiction in all civil matters to the district courts. Id. We found that DEQ determinations are not civil matters within the meaning of La. Const. art. V, sec. 16(A), and therefore not within the district courts' constitutional grant of original jurisdiction, "because waste disposal and water discharge permitting did not exist as a traditional judicial civil matter in 1974 and has never been delegated in the first instance to the judicial branch...." Id. at 373. Further, we also concluded that when the legislature has not specifically provided for de novo judicial review of a DEQ final decision or order, judicial review is an exercise of a court's appellate, rather than original, jurisdiction. Id. at 370.
In the instant case, we conclude that adjudications relating to the approval of insurance policy forms, including a determination of whether a form violates the law pursuant to La. R.S. 22:621, are not "civil matters" within the meaning of La. Const. art. V, sec. 16(A). Like the DEQ determinations discussed in American Waste, we find that the adjudication at issue is not within the district courts' constitutional grant of original jurisdiction because the approval of insurance policy forms did not exist as a traditional judicial civil matter in 1974 and the record contains no evidence that such determinations were ever delegated in the first instance to the judicial branch. Unlike workers' compensation actions and tort claims, the approval of basic insurance policy forms and the ability of an agency to disapprove a policy form if it violates the law are not traditional civil matters presided over by district courts. See Act 125 of 1958 (amending and reenacting the Insurance Code and providing in Section 620 that "[n]o basic insurance policy form ... shall be issued, delivered, or used unless it has been filed with and approved by the Commissioner of Insurance"). Consequently, we find the district court erred in concluding Act 739 unconstitutionally divests the district courts of original jurisdiction.
Turning now to the issue of whether the Act violates the constitutional mandate of an elected judiciary, we find that because the executive branch ALJs employed by the DAL do not exercise *766 judicial power, they are not required to be elected. Pursuant to our constitutional scheme, the authority to exercise judicial power is vested in elected officials. La. Const. art. V, secs. 1 and 22. Because we have already determined that the ALJs are authorized to perform quasi-judicial, rather than judicial, functions, there is no constitutional requirement that they be elected. This court's previous decisions in Bordelon v. Louisiana Dept. of Corrections, 398 So.2d 1103 (La.1981) and State v. O'Reilly, 00-2864 (La.5/15/01), 785 So.2d 768, in which we addressed the constitutional validity of an Act that permitted a non-elected commissioner to conduct a hearing on a motion for injunctive relief and to submit proposed findings of fact and recommendations for disposition to the district judge and the constitutional validity of a portion of a statute that allowed a non-elected commissioner to conduct trials, accept pleas, and impose sentences in misdemeanor cases, are inapplicable as those opinions clearly involved a situation in which the judicial power of the state was being utilized. This can be seen by the following quote from Bordelon:
Certain judicial power may be delegated without any abdication of the judge's fundamental responsibility for deciding cases. Delegation of power to conduct evidentiary hearings and to prepare proposed findings of fact and recommendations for disposition based on the evidence and the arguments is not inconsistent with the constitution and laws which vest the judicial power in judges of enumerated courts, as long as the judges retain the responsibility for making ultimate decisions in the case.
398 So.2d at 1105 (emphasis added). Similarly, in O'Reilly, we stated that the provision at issue clearly "allows the commissioner to exercise a portion of judicial power restricted by La. Const. art. V, secs. 1 and 22 to elected judges of authorized courts." 00-2864 at p. 8, 785 So.2d at 774. Thus, the analysis used in those cases, which involved the question of whether the non-elected commissioners were making final determinations which involved the exercise of adjudicatory, or judicial, power, are inapplicable in the instant situation. Because we find the ALJs are not authorized to exercise judicial power, we find the Act 739 does not violate La. Const. art. V, sec. 22(A).
In addition to the grounds discussed above, the district court found that "[t]he divestiture of power delegated to the Commissioner of Insurance is a violation of Article IV, Section 1B...." That Article provides in pertinent part, "The powers, functions, and duties allocated by this constitution to any executive office or commission shall not be affected or diminished by the allocation provided herein except as authorized by Section 20 of this Article."[10] Article IV, sec. 11 of the Louisiana Constitution provides, "There shall be a Department *767 of Insurance, headed by the commissioner of insurance. The department shall exercise such functions and the commissioner shall have powers and perform duties authorized by this constitution or provided by law." As explained above in our discussion of the historical development of the office of the Commissioner, it is abundantly clear that the delegates of the 1973 Constitutional Convention thoroughly considered whether to enunciate the powers and duties of the Commissioner in the constitution, or whether to leave the task to the legislature. Ultimately, they voted not to designate any powers and duties in the constitution and to allow the legislature to specify the Commissioner's powers and duties. The voters approved this decision. Consequently, with the exception of La. Const. art. XII, sec. 8.1, which allows the legislature to create a private, nonprofit corporation to deliver workers' compensation insurance and gives the Commissioner or the corporation's policyholders the exclusive power to dissolve or otherwise terminate the corporation, the Commissioner has no powers, functions or duties allocated to him by the constitution. The Act does not affect the Commissioner's constitutional right to dissolve or otherwise terminate private, nonprofit corporation to deliver workers' compensation insurance created by the legislature, therefore it does not violate La. Const. art. IV, sec. 1(B).
It is also submitted that the enactment of La. R.S. 49:992(B)(2) by Act 739 unconstitutionally usurps the Commissioner's powers to regulate insurance in the public interest. That subsection provides:
In an adjudication commenced by the division, the administrative law judge shall issue the final decision or order, whether or not on rehearing, and the agency shall have no authority to override such decision or order.
The enactment of this provision represents a change in our law. It has been explained by a former professor of law as follows:
This is a remarkable provision. It makes an ALJ's decision unreviewable by the agency itself. This means, in contrast to our years of believing that executive agencies should appropriately promulgate and enforce regulations, the ultimate power to interpret agency regulations and to enforce or not enforce laws and regulations has been turned over to the state's ALJs. No longer do agency heads have the ability to reverse  under any circumstances, with or without explanation  an ALJ's decision.
Jay S. Bybee, Agency Expertise, ALJ Independence, and Administrative Courts: The Recent Changes in Louisiana's Administrative Procedure Act, 59 La. L.Rev. 431, 455 (1999) (footnotes omitted). While we agree that this particular provision effectuates a change in the law, there is no indication of a constitutional impediment to the change. Our constitution allows the legislature to define the powers and duties of the Commissioner and it has evidenced a clear intent to make the Commissioner's decision subordinate to that of the ALJ. The legislative history of Act 739 reveals that the legislature desired to transfer the ALJs previously employed by the various agencies to a central division to remove the ALJs from the direct influence of the agency heads and to give them a measure of independence. The legislature believed it unlikely that ALJs could render impartial and independent decisions while depending on their agencies for their livelihoods.
As mentioned previously, the district court declared Act 739 unconstitutional on a myriad of grounds, most of which are *768 discussed above. We have thoroughly reviewed each ground enunciated by the district court and find no merit in any of them. Consequently, we must reverse the declaration of unconstitutionality as to Act 739.
The district court similarly declared Act 1332 of 1999 unconstitutional on several grounds, including separation of powers. Act 1332 amended and reenacted portions of the LAPA to provide that no agency or official thereof, or other person acting on behalf of an agency or official shall be entitled to judicial review of an adjudication proceeding. The Commissioner asserts that this Act is unconstitutional because it vests civil service employees of an executive agency with the power to make the initial interpretation of law, and then precludes judicial control or oversight. The Commissioner contends that it is the ultimate function of the courts to determine the legality of an ALJ's administrative decisions.
A plain reading of Act 1332 makes it clear that no agency or official is entitled to judicial review of an adjudication proceeding. The legislative history of this provision reveals that it was enacted to promote fairness to prevailing private litigants and prevent them from having to compete against the power and financial resources of the state. After much consideration, we conclude that under the particular factual circumstances presented in this matter, the Commissioner has not shown Act 1332 to be unconstitutional.[11]
Article 1 of the constitution, the Declaration of Rights Article, "protects the rights of individuals against unwarrantable government action and does not shield state agencies from law passed by the people's duly elected representatives." Board of Comm'rs of Orleans Levee Dist. v. Department of Natural Resources, 496 So.2d 281, 287 (La.1986) (on rehearing). See also Morial v. Smith & Wesson Corp., 00-1132, pp. 10-11 (La.4/3/01), 785 So.2d 1, 11. Article I was not fashioned to protect government entities against unjust government action. Board of Comm'rs, 496 So.2d at 287. Consequently, as a creature of the state rather than a "person," the Commissioner has no due process rights, no constitutional right to property, and no constitutional right of access to the courts.
Without a right of access to the courts pursuant to La. Const. art. I, sec. 22,[12] the Commissioner must be granted the right to appeal an ALJ's decision and order by statute. We have previously recognized the principle that "appeals by state agencies of decisions made by other agencies are disfavored unless the right to such an appeal is specifically conferred by statute." State through Dept. of Pub. Safety and Corrections, Office of State Police, Riverboat Gaming Div. v. Louisiana Riverboat Gaming Com'n, 94-1872, p. 16 (La.5/22/95), 655 So.2d 292, 301. While we have earlier stated that the right of judicial review of administrative proceedings is presumed to exist, see e.g. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330, 335 (La.1980); Bowen v. Doyal, 259 La. 839, 845, 253 So.2d 200, 203 (1971), these statements were made in cases in which the party seeking judicial review was a "person."[13] *769 In any case, the legislature's enactment of Act 1332 clearly rebutted any presumption that could have arguably existed in favor of the Commissioner.
In Louisiana Riverboat Gaming Commission, this court was faced with the question of whether the Gaming Enforcement Division of the Louisiana State Police (hereinafter "the Division") had the right to seek judicial review of a decision of the Louisiana Riverboat Gaming Commission (hereinafter "the Commission") under the applicable statutory provision. 94-1872 at p. 1, 655 So.2d at 293. Specifically, the case involved an application to the Division for a license to conduct gaming activities on a riverboat. The Division denied the request. Pursuant to statutory authority, the applicant appealed the Division's denial of its application to the Commission, which reversed the Division's decision and ordered the Division to issue the requested license. This court ultimately determined the legislature did not intend for the Division to have the right to appeal decisions of the Commission. Id. at p. 20, 655 So.2d at 303. In reviewing administrative law principles and the rights of agencies to appeal adverse decisions of another agency, we quoted the following from Pritchard v. State, Division of Vocational Rehabilitation, 540 P.2d 523, 529 (Wy.1975):
We recognize the concept which holds that if an "agency" is given a specific right to appeal to the court, such a grant is within the power of the legislature and must be honored. But there must be an applicable appeal procedure spelled out in the statute. It cannot be inferred and, as here, where the statute specifically excludes an agency's right of appeal, there cannot be any question but that the agency enjoys no such appellate privileges.
Louisiana Riverboat Gaming Com'n at p. 12, 655 So.2d at 299. Because the legislature elected not to give the Division the right to appeal decisions of the Commission, we declined to create such a right. Id.
Following the established principle that appeals by state agencies of decisions made by other agencies are disfavored in the absence of a statutory right of appeal, we conclude that the Commissioner is not entitled to appeal the decision of the ALJ. We see no constitutional impediment to the legislature's decision to deny such an appeal right to the Commissioner. We have already recognized that the ALJ did not exercise judicial power when he interpreted the law relating to a traditionally regulatory matter, and the Commissioner has not shown how the lack of a right to appeal changes the nature of the power exercised by the ALJ. We discern no violation of the requirement of separation of powers. Instead of viewing the Commissioner's lack of a right to appeal the ALJ's adverse decision as a usurpation of judicial power, we view it as a lack of procedural capacity on the part of the Commissioner. The legislature has chosen to deny the right of judicial review to one executive branch office when another executive branch office has ruled against it. Essentially, the legislature has chosen to allow the ALJs to adjudicate, and in some cases to finally adjudicate, various matters concerning the insurance industry in this state and to reduce the Commissioner's ability to regulate insurance by prohibiting him from overriding the ALJs decision or order and from seeking judicial review of an *770 adverse decision or order. While we recognize that one may question the wisdom of this decision, it is within the legislature's prerogative to make this change. As we have stated repeatedly throughout this opinion, while the Commissioner of Insurance is a constitutionally-created office, the Commissioner has no constitutionally-defined powers and duties. He has the constitutional right to exist, but, in the absence of a constitutional amendment, it is the legislature that has the right to define his powers and duties.
We note, however, that the Commissioner is not without the prospect of a judicial remedy. Nothing in the Acts at issue evidences an intent to deprive the Commissioner of the right to seek a declaratory judgment on the proper interpretation of our insurance laws. Thus, it is possible that the Commissioner could bring an action for declaratory judgment under a district court's original jurisdiction when he believes a legal issue was wrongly decided by an ALJ. While it is questionable whether he could change the result of the underlying adjudication, it appears he may be entitled to a declaratory judgment regarding the legal controversy at issue. The district court, acting under its original jurisdiction, would not, of course, owe any deference to the ALJ's decision and order on the merits of the underlying matter. In contrast, however, all ALJs owe deference to judgments of the courts and must apply the law on the merits of the underlying matter as interpreted by the courts once they rule on the issue. The Commissioner has the additional possible remedy of petitioning the legislature for redress.
We recognize that the district court declared Act 1332 unconstitutional on several grounds. While we have discussed the most important grounds in detail, we have thoroughly considered each of its grounds and the arguments of the Commissioner and we find no merit to them. Consequently, we conclude the district court erred in declaring Act 1332 of 1999 unconstitutional.
We are left with that portion of the district court's judgment declaring the decision and order of the ALJ in the underlying matter null and void because it was rendered by an entity without constitutional authority to make final decisions and declaring that the RCU form submitted by State Farm is contrary to law, and granting a permanent injunction against defendants from enforcing and utilizing the provisions of Act 739 of 1995 and Act 1332 of 1999, permanently enjoining the ALJ's decision and order, and permanently enjoining State Farm from issuing the disputed RCU form in Louisiana until it is approved by the Commissioner. In addressing these remaining portions of the judgment, we note that State Farm filed a peremptory exception of res judicata, which the district court denied. State Farm argues that its exception of res judicata should have been granted because, as between State Farm and the Commissioner, the rulings of the administrative law judge and of the courts in the previous litigation preclude the Commissioner from litigating the claims in this proceeding against State Farm. State Farm further contends it should not have to relitigate the constitutional issues which could have been addressed in the prior proceedings and that the legality of the RCU form has been established in a final judgment.
The res judicata statute, La. R.S. 13:4231 provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at *771 the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Pursuant to this statute, then, a second action is precluded when all of the following criteria are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, 02-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053. The first two requirements mandate the existence of a valid and final judgment. For res judicata purposes, a valid judgment "is one rendered by a court with jurisdiction over both the subject matter and the parties after proper notice was given." Id. Similarly, a final judgment "is one that disposes of the merits in whole or in part." Id. We believe that these requirements presuppose that the judgment at issue was one wherein judicial power was exercised by an Article V tribunal. While our courts routinely discuss the res judicata effect to be given certain rulings made by workers' compensation hearing officers, see e.g. Jackson v. Iberia Parish Gov't, 98-1810 (La.4/16/99), 732 So.2d 517, the workers' compensation hearing officers have been given constitutional authority to hear matters that would otherwise arise under the district courts' original jurisdiction. See La. Const. art. V, sec. 16(A); Moore, 567 So.2d at 79-80. Because the decision and order of the ALJ was not a valid and final judgment for purposes of res judicata, we find the ALJ's judgment is not entitled to res judicata effect.
We do find, however, that the judgment of the court of appeal in Brown v. State Farm Fire & Cas. Co., 00-0539 (La.App. 1 Cir. 6/22/01), 804 So.2d 41, writ denied 01-2504 (La.12/7/01), 803 So.2d 37, became final once we denied the Commissioner's writ application. McGrail v. Lee, 02-1496 (La.7/3/03), 852 So.2d 990 (per curiam); Rivet v. State, Dept. of Transp. and Dev., 96-0145, p. 6 (La.9/5/96), 680 So.2d 1154, 1158. The final judgment, though, was that the Commissioner had no right to appeal the decision and order of the ALJ; consequently, the court of appeal itself had no appellate jurisdiction because the district court had none.[14]Metro Riverboat Assoc., Inc. v. Louisiana Gaming Control Bd., 01-0185, p. 10 (La.10/16/01), 797 So.2d 656, 663. The court of appeal had no jurisdiction for the purpose of determining the merits of the parties' arguments outside of those relating to the courts' appellate jurisdiction. Id. Accordingly, any statements made by the court of appeal that were not related to the jurisdictional issue were dicta. *772 We find, therefore, that although the judgment of the court of appeal in the previous litigation was final, State Farms's exception of res judicata was properly denied as the instant cause of action did not arise out of the transaction or occurrence that was the subject matter of the litigation.
Turning again to the judgment of the district court, we reverse, for all the reasons discussed herein, that portion declaring the decision and order of the ALJ in the underlying matter null and void on the grounds that it was rendered by an entity without constitutional authority to make final decisions. Similarly, we reverse the district court's grant of injunctive relief against defendants as it relates to the carrying out, implementing, enforcing and/or utilizing the provisions of the Acts at issue based on our conclusion that the Acts have not been proven to be constitutionally infirm. We further find that the Commissioner's attempt to secure injunctive relief against the decision and order of the ALJ in the underlying matter is improper because the Commissioner has not adequately shown on the record how irreparable injury, loss, or damage may occur such that an injunction would be properly issued.
While the judgment of the district court is somewhat broad and confusing, it does appear that the district court granted declaratory judgment relating to the merits of the RCU policy form dispute. Because the Commissioner did request declaratory judgment and because we herein recognized the possibility that the Commissioner might be entitled to a declaratory judgment in a case such as this where the dispute is in a regulatory context, but involves a purely legal question, we will remand this narrow issue to the court of appeal and allow it to consider whether the Commissioner is entitled to seek declaratory judgment regarding whether the RCU form complies with the law and whether the district court correctly determined that it does not. The court of appeal is specifically referred to this court's recent opinion in Prator v. Caddo Parish, 04-0794 (La.12/1/04), 888 So.2d 812, and asked to determine whether the Commissioner is entitled to seek declaratory judgment regarding the issue of whether State Farm's RCU policy form, as submitted, complies with the applicable laws. If the court of appeal determines that the Commissioner is so entitled, then it shall review the judgment of the district court on this issue and render a judgment on the merits of the dispute.

DECREE
For all the reasons discussed above, we find the Commissioner has not satisfied his burden of proving that the legislature's enactment of Act 739 of 1995 and Act 1332 of 1999 is in violation of any constitutional provision. Consequently, the judgment of the district court declaring these Acts unconstitutional, null and void in their entirety is reversed, vacated, and set aside. The judgment of the district court declaring the decision and order of the ALJ null and void on the ground that it was rendered by an entity without constitutional authority is similarly reversed, vacated, and set aside. The judgment of the district court granting permanent injunctive relief on various grounds in favor of the Commissioner is reversed, vacated, and set aside. The case is remanded to the court of appeal for further proceedings consistent with this opinion.
REVERSED IN PART, VACATED IN PART, SET ASIDE IN PART; AND REMANDED TO THE COURT OF APPEAL.
*773 JOHNSON, J., concurs.
WEIMER, J., concurs and assigns reasons.
WEIMER, J., concurring.
The determination by the Commissioner of Insurance which is at issue in this matter  approval or disapproval of an insurance policy form  is a regulatory matter or administrative law matter as opposed to a "civil matter" pursuant to Louisiana Constitution art. V, § 16(A). The regulatory determination at issue here has always been made by the Commissioner of Insurance as opposed to a district court. As such, review by an Administrative Law Judge is constitutionally permissible as this action does not involve the exercise of "judicial power". Compare and contrast the discussion in my dissent in State v. Umezulike, 03-KA-1404, (La.2/25/04), 866 So.2d 794, 802-804, in which I concluded the issuance of a search warrant was the exercise of judicial power.
NOTES
[1] La. R.S. 22:620 provides:

A. (1) No basic insurance policy form, other than surety bond forms, or application form where written application is required and is to be attached to the policy, or be a part of the contract or printed life or health and accident rider or endorsement form shall be issued, delivered, or used unless it has been filed with and approved by the commissioner of insurance.
(2) For purposes of this Section, a basic insurance policy form shall include a certificate of coverage, any other evidence of coverage, or a subscriber agreement.
(3) This Section shall not apply to policies, riders, or endorsements designed to delineate the coverage for and used with relation to insurance upon a particular subject or which relate to the manner of distribution of benefits or to the reservation of rights and benefits under such policy, and which is used at the request of the individual policyholder, contract holder, or certificate holder.
(4) Any insurer may insert in its policies any provisions or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of this Code.
B. Every such filing shall be made not less than forty-five days in advance of any such issuance, delivery, or use. At the expiration of forty-five days the form so filed shall be deemed approved unless prior thereto it has been affirmatively approved or disapproved by order of the commissioner of insurance. The commissioner of insurance may extend by not more than an additional fifteen days the period within which he may so affirmatively approve or disapprove any such form, by giving notice of such extension before expiration of the initial thirty-day period. At the expiration of any such period as so extended, and in the absence of such prior affirmative approval or disapproval, any such form shall be deemed approved. The commissioner of insurance may withdraw any such approval at any time for cause. Approval of any such form by the commissioner of insurance shall constitute a waiver of any unexpired portion of such initial fifteen-day waiting period.
C. The commissioner of insurance's order disapproving any such form or withdrawing a previous approval shall state the grounds therefor.
D. No such form shall knowingly be so issued or delivered as to which the commissioner of insurance's approval does not then exist.
E. The commissioner of insurance, may, by order, exempt from the requirements of this Section for so long as he deems proper, any insurance document or form or type thereof as specified in such order, to which in his opinion this Section may not practicably be applied, or the filing and approval of which are, in his opinion, not desirable or necessary for the protection of the public.
F. Insurers negotiating with and insuring special commercial entities shall be exempt from the form filing and approval requirements of this Section. The commissioner shall adopt rules and regulations necessary for the implementation of this Subsection including a provision defining special commercial entities which qualify for exemption. The definition of exempt commercial policyholder shall be reviewed periodically by the commissioner. This Subsection shall apply only to commercial property and casualty insurance. The regulations required by this Subsection shall be adopted no later than April 1, 2000.
[2] La. R.S. 22:621 provides that the Commissioner shall disapprove a policy form "[i]f it is in any respect in violation of or does not comply with law."
[3] La. R.S. 49:964(A)(2) provides:

No agency or official thereof, or other person acting on behalf of an agency or official thereof shall be entitled to judicial review under this Chapter.
[4] La. R.S. 49:992(B)(3) provides:

Nothing in this Section shall affect the right to or manner of judicial appeal in any adjudication, irrespective of whether or not such adjudication is commenced by the division or by an agency. However, no agency or official thereof, or other person acting on behalf of an agency or official thereof, shall be entitled to judicial review of a decision made pursuant to this Chapter.
[5] One portion of the Act, however, which is codified by La. R.S. 49:992(B)(2) and states that "[i]n an adjudication commenced by the division, the administrative law judge shall issue the final decision or order, whether or not on rehearing, and the agency shall have no authority to override such decision or order," does make an important change relating to an agency's authority within the executive branch. This provision will be addressed in further detail in another section of this opinion.
[6] La. Const. art. V, sec. 1 provides, "The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article."
[7] La. Const. art. V, sec. 22(A) provides in pertinent part, "Except as otherwise provided in this Section, all judges shall be elected."
[8] La. Const. art. V, sec. 16(A) provides in pertinent part, "Except as otherwise authorized by this constitution ... a district court shall have original jurisdiction of all civil and criminal matters." Further, La. Const. art. V, sec. 16(B) provides, "A district court shall have appellate jurisdiction as provided by law."
[9] La. Const. art. II, sec. 1 provides, "The powers of government of the state are divided into three separate branches: legislative, executive, and judicial." La. Const. art. II, sec. 2 provides, "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."
[10] La. Const. art. IV, sec. 20 does not apply to the issue herein. It states:

After the first election of state officials following the effective date of this constitution, the legislature may provide, by law enacted by two-thirds of the elected members of each house, for appointment, in lieu of election, of the commissioner of agriculture, the commissioner of insurance, the superintendent of education, the commissioner of elections, or any of them. In that event, the legislature shall prescribe qualifications and method of appointment and by similar vote, may provide by law for the merger or consolidation of any such office, its department, and functions with any other office or department in the executive branch. No action of the legislature pursuant hereto shall reduce the term or compensation of any incumbent elected official. By law enacted by two-thirds of the elected members of each house, the legislature may reestablish any such office as elective and, in that event, shall prescribe qualifications.
[11] We note that the situation presented would be far different if private individuals were prevented from seeking judicial review of an adjudication proceeding.
[12] La. Const. art. I, sec. 22 provides:

All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
[13] The right of judicial review in administrative law has been said to be "an important safeguard of due process and the availability of judicial review may be critical in determining whether a party has been denied due process." Robert Force & Lawrence Griffith, The Louisiana Administrative Procedure Act, 42 La. L.Rev. 1227, 1270 (1982).
[14] As we recognized in Metro Riverboat,"judicial review of the decision of an administrative agency ... is an exercise of a court's appellate jurisdiction pursuant to La. Const. art. V, § 16(B)." 01-0185 at p. 5, 797 So.2d at 660 (citing American Waste, 588 So.2d at 371).