934 So.2d 35 (2006)
Chanda Jan Covington SPINOSA
v.
Joseph Thomas SPINOSA.
Nos. 2005-C-1935, 2005-C-1940.
Supreme Court of Louisiana.
July 6, 2006.
*37 Balhoff & McCollister, Brent J. Bourgeois, Jon K. Parsons, Baton Rouge, for Applicant (No. 2005-C-1935).
Breazeale, Sachse & Wilson, Paul M. Hebert, Jr., Michael P. Fruge', Baton Rouge; Lowe, Stein, Hoffman, Allweiss & Hauver, Robert C. Lowe, New Orleans; Kantrow, Spaht, Weaver & Blitzer, John C. Miller, Jennifer A. Hataway, Baton Rouge, Charles W. Belsom, Jr., for Respondent (No. 2005-C-1935).
Breazeale, Sachse & Wilson, Paul M. Hebert, Jr., Michael P. Fruge', Baton Rouge; Lowe, Stein, Hoffman, Allweiss & Hauver, Robert C. Lowe, New Orleans, for Applicant (No. 2005-C-1940).
Balhoff & McCollister, Brent J. Bourgeois, Jon K. Parsons, Baton Rouge; Kantrow, Spaht, Weaver & Blitzer, John C. Miller, Jennifer A. Hataway, Baton Rouge, Charles W. Belsom, Jr., for Respondent (No. 2005-C-1940).
CALOGERO, Chief Justice.[*]
In this case, we must decide whether the Family Court of East Baton Rouge Parish has subject-matter jurisdiction to decide issues arising from a former wife's petition to partition community property. The subject-matter jurisdiction question arises from two unusual circumstances. First, the former wife's petition to partition community property names as a defendant, in addition to her former husband, a trust settled by her and her former husband during their marriage, to which she now claims her former husband fraudulently diverted community funds without her permission. Thus, the question arises whether the family court has subject-matter jurisdiction over the wife's claims against the third-party trust. Second, the former wife's petition to partition community property asserts a relative nullity under La.Code of Civ. Proc. art. 2004 of a 1990 "Judgment Authorizing Adoption of Matrimonial Agreement" entered by the *38 19th Judicial District Court of the Parish of East Baton Rouge, which authorized the former spouses to adopt a separate property regime. Thus, the question arises whether the family court has subject-matter jurisdiction under La.Rev.Stat. § 13:1401(A)(2) to annul a judgment issued by the 19th Judicial District Court, the court which had jurisdiction over such an action in 1990, prior to the Legislature's expansion of the family court's jurisdiction.[1]
In addition to the subject-matter jurisdiction question, we must determine whether the Family Court of East Baton Rouge Parish is the proper venue to resolve the former wife's petition to partition community property and especially her claims against the third-party trust.
The family court and the court of appeal concluded that subject-matter jurisdiction and venue are proper in the East Baton Rouge Parish Family Court. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY
On July 8, 1980, Chanda Jan Covington Spinosa (hereinafter "Mrs. Spinosa") and Joseph Thomas Spinosa (hereinafter "Mr. Spinosa") were married in the U.S. Virgin Islands. Thereafter, they established their matrimonial domicile in East Baton Rouge Parish. Almost ten years later, in 1990, Mr. and Mrs. Spinosa jointly signed a "Petition for Adoption of Matrimonial Agreement," which the 19th Judicial District Court authorized in a judgment. As a result, the Spinosas purportedly terminated their community property regime, thereby creating a separate property regime. This judgment, which was recorded on January 10, 1990, provides that "all property acquired during the existence of the marriage with community things and the fruits of community things, shall be jointly owned separate property belonging to each spouse."[2] The parties did not coincidently partition or divide their property.
During their marriage, the Spinosas operated a real estate business composed of multiple companies that were involved in the acquisition, development, and management of real estate projects. This real estate business eventually flourished, and according to Mrs. Spinosa, in October of 1998, was worth an alleged $53,894,765.00.
On January 2, 2000, Mr. and Mrs. Spinosa physically separated, and on January 10, 2000, Ms. Spinosa filed a "Petition for Divorce." Mr. Spinosa responded with an "Answer to Petition for Divorce," alleging, among other things that the community property regime between the parties had been terminated by the 1990 matrimonial agreement and judgment. A judgment of divorce was entered on September 27, 2000.
Following the divorce, Mr. Spinosa insisted that Mrs. Spinosa's share of the real estate holdings was less than a half million dollars.[3] On February 15, 2001, Mrs. Spinosa filed a "Petition for Judicial Partition of Community Property." She alleged *39 that the separation of property agreement was void and of no force or effect, and she sought to annul the 1990 judgment of the 19th Judicial District Court. In response to this petition, Mr. Spinosa filed exceptions of prescription, no cause of action, no right of action, and lack of subject-matter jurisdiction. On July 13, 2001, the East Baton Rouge Parish Family Court judge overruled all of the exceptions, and allowed Mrs. Spinosa to amend her petition to include a request to nullify the 1990 judgment. Mrs. Spinosa filed her "First Amended Petition," in which she sought to nullify the 1990 judgment because of fraud and ill practices. She alleged that she first discovered the fraudulent acts and/or ill practices in December 2000, which was less than one year prior to the filing of her petition.
Mr. Spinosa filed an application for supervisory writs with the First Circuit Court of Appeal from the family court decision overruling his exceptions. After granting the writ, the First Circuit remanded the case to the family court and ordered that Mrs. Spinosa be permitted to amend her second petition to state a cause of action. In a "Second Amended Petition," she explained that the fraudulent acts and/or ill practices were discovered only after Mr. Spinosa, in response to a discovery request, produced business records, which documented his treatment of community assets under his exclusive direction and control. That production of records was in December 2000.
Following several additional motions, Mr. Spinosa filed a motion for separate trials, and supplemental exceptions of prescription, failure to join an indispensable party, lack of subject-matter jurisdiction, no cause of action, and no right of action. Shortly thereafter, Mrs. Spinosa filed a "Third Supplemental and Amending Petition" in which she added the Spinosa Class Trust (hereinafter "Trust") as a defendant. In the process of doing so, she amended many of the petition's allegations to include references to property belonging to the Trust. Again, Mr. Spinosa responded by filing exceptions of prescription, vagueness, lack of subject-matter jurisdiction, no right of action, no cause of action, and failure to join an indispensable party. The Trust also responded to the petition, filing exceptions of improper venue, lack of subject-matter jurisdiction, non-joinder of an indispensable party, and no cause of action.
The family court conducted a hearing regarding the pending exceptions and motions on November 13, 2003. The family court denied all of the exceptions urged by Mr. Spinosa and by the Trust. Of particular interest is the family court's thirty-nine pages of written reasons, which overruled the exceptions of subject-matter jurisdiction raised by Mr. Spinosa and the Trust and the exception of improper venue.
Both Mr. Spinosa and the Trust applied for supervisory writs. The First Circuit exercised supervisory review over the exception of improper venue and found that the action as it affects the Trust does not fall within the scope of the actions contemplated or specifically authorized by the trust code. The court of appeal found no merit in the defendants' remaining exceptions. Finding that these exceptions were interlocutory in nature, the First Circuit declared that there is an adequate remedy on appeal.
Mr. Spinosa and the Trust filed writs of certiorari in this court, seeking reversal of the lower courts' rulings. In the defendants' applications, Mr. Spinosa and the Trust, once again, raised the exceptions of no cause of action, prescription, lack of subject-matter jurisdiction, improper venue, and failure to join an indispensable party. We granted writs primarily to consider *40 the rulings on subject-matter jurisdiction and venue. Spinosa v. Spinosa, 05-C-1935 (La.3/17/06), 925 So.2d 521. We decline to consider the remainder of the exceptions, all interlocutory in nature, because those exceptions have been denied by the lower courts, and the parties are thus free to raise them anew.[4]

DISCUSSION
As demonstrated by the above discussion of the facts and procedural history, the ultimate resolution of the myriad issues in this case will depend on numerous considerations. For example, the exceptions of no cause of action raised by the defendants suggest that no Louisiana substantive or procedural law (and particularly no provision of the Louisiana Trust Code) would allow Mrs. Spinosa to collect monies directly from the third-party trust, even if she could somehow prove that Mr. Spinosa has improperly diverted community property into that trust. We decline to consider those issues at this stage of the proceedings because we believe a more fundamental question must be answered before any Louisiana court can decide the issues raised by the defendants' other exceptions, which we do not address in this opinion.
The fundamental question that must be answered in this case before the other exceptions can properly be addressed is a question that we consider to be solely within the purview of the Family Court of East Baton Rouge Parish, as further explained below. That question relates to the classification of the property Mrs. Spinosa claims belongs to the community that she alleges still exists between herself and Mr. Spinosa. Virtually all of Mr. Spinosa's exceptions are rooted in his argument that all the community property ever owned by himself and Mrs. Spinosa was either apportioned pursuant to the 1990 matrimonial agreement, or placed by him and Mrs. Spinosa in the third-party trust. Mrs. Spinosa claims that the 1990 matrimonial agreement is null and that assets held by the trust are actually community property that Mr. Spinosa has improperly diverted to the trust, specifically without her assent or concurrence. Until the question of the classification of the property is resolved as community, separate, or neither (the latter if the property belongs to the trust), a number of the exceptions filed by the defendants should not be decided.
Seen from that perspective, our conclusions, further explained below, that the issue of whether subject-matter jurisdiction and venue are proper in the Family Court of East Baton Rouge Parish, is grounded in the fact that the first question to be answered in this complex litigation is whether the property Mrs. Spinosa claims is in fact community property, or something else, as Mr. Spinosa claims. The family court's attention in resolution of Mrs. Spinosa's claims must first be directed to the classification and division of community property.
With the above considerations in mind, this opinion will therefore address the two matters that we consider to be the "threshold" issues in this case, that is, whether the Family Court of East Baton Rouge Parish has subject-matter jurisdiction over Mrs. Spinosa's petition to partition community property and whether venue *41 properly lies in the Family Court of East Baton Rouge Parish.

A. DECLINATORY EXCEPTION OF SUBJECT-MATTER JURISDICTION
Subject-matter jurisdiction is defined by the Louisiana Code of Civil Procedure as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." La.Code Civ. Proc. art. 2. As to the source of the family court's jurisdiction, the Louisiana Constitution provides that "[n]otwithstanding any contrary provisions of Section 16 of this Article, juvenile and family courts shall have jurisdiction as provided by law." La. Const. art. V, § 18. The Louisiana Constitution also states that "the legislature may provide by law that a family court has jurisdiction of cases involving title to movable and immovable property when those cases relate to the partition of the community property and the settlement of claims arising from matrimonial regimes when such action arises as a result of divorce or annulment of marriage." La. Const. art. V, § 16. Consequently, we will examine those laws enacted by the legislature that grant jurisdiction to the East Baton Rouge Parish Family Court.
By virtue of La.Rev.Stat. 13:1401, the East Baton Rouge Parish Family Court has exclusive jurisdiction over certain domestic matters. In particular, La.Rev. Stat. § 13:1401(A)(2) enumerates the following actions arising out of a marriage or the termination of a marriage:
A. There is hereby established the family court for the parish of East Baton Rouge, which shall be a court of record with exclusive jurisdiction in the following proceedings:
* * *
(2)(a) All actions between spouses or former spouses for partition of community property and property acquired pursuant to a matrimonial regime.
(b) All actions for the termination or modification of a matrimonial regime.
(c) All actions for the settlement and enforcement of claims arising from matrimonial regimes or the establishment thereof.
(d) All actions between former spouses seeking the enforcement of a judicial or contractual settlement of claims provided in this Subsection.
Thus, La.Rev.Stat. § 13:1401(A)(2) clearly empowers the family court to classify, as community or separate, assets belonging to a married or formerly married couple. Thus, the family court has jurisdiction to resolve conflicts that concern classification of such assets.
This court has not heretofore explored the scope of the family court's jurisdiction as provided by the provisions of La.Rev. Stat. § 13:1401(A)(2). We will, therefore, examine as possibly persuasive authority the treatment of this jurisdictional issue in previous court of appeal cases. The First Circuit has addressed the jurisdictional scope of the East Baton Rouge Parish Family Court from time to time.
First, in Ransome v. Ransome, the First Circuit determined that the family court was the court of proper jurisdiction under La.Rev.Stat. § 13:1401(A)(2)(d), over an action "between former spouses seeking enforcement of a contractual settlement of claims." 99-1291, p. 5 (La.App.1 Cir. 1/21/00), 791 So.2d 120, 123.[5] In Ransome, *42 the plaintiff filed a petition against her former husband to recover damages for breach of a community property partition agreement, and for enforcement of an agreement entitling her to community assets. Id. at 3, 791 So.2d at 121. The First Circuit found that the Legislature specifically granted the family court jurisdiction over "all actions" for partition of community property between spouses or former spouses, termination or modification of matrimonial regimes, settlement and enforcement of claims arising from matrimonial regimes, and the enforcement of these enumerated claims between former spouses.[6]Id. at 5, 791 So.2d at 122. More significantly, however, the First Circuit explained in that case:
Although our decision is dictated by the legislation, our holding gives deference to the intent of the legislature which obviously has been to expand the jurisdiction of the Family Court to provide one forum to resolve disputes between spouses or former spouses which involve issues related to their marriage.
Id. at 5-6, 791 So.2d at 123. Citing La. Rev.Stat. § 13:1401(A)(2)(d), the First Circuit concluded that the East Baton Rouge Parish Family Court had exclusive jurisdiction over the plaintiff's claims despite "the fact the claim is titled as an action for breach of contract, specific performance, and damages." Id.
Then, in Gerald v. Gerald, just five months later, the First Circuit concluded that the Nineteenth Judicial District Court did not have subject-matter jurisdiction over a former wife's community property partition claim involving a community interest in the monthly State retirement benefit then being paid to her former husband. 99-1328, p. 1 (La.App. 1 Cir. 6/23/00), 762 So.2d 1241, 1242. While the parties had earlier signed a community *43 property settlement agreement partitioning the community of acquets and gains, there had been no apportionment of their interests in the retirement plan. Id. Five years after signing the community property settlement agreement, the plaintiff learned that her former husband had retired, and she initiated a proceeding seeking a judgment awarding her the full amount of her interest in the retirement plan. Id. The First Circuit found that the Family Court of East Baton Rouge Parish by virtue of La.Rev.Stat. § 13:1401 has exclusive jurisdiction over actions "whether between spouses or `former spouses,' for partition of community property and property acquired pursuant to a matrimonial regime." Id. at 3, 762 So.2d at 1243. The First Circuit concluded that since "this matter involves an action between former spouses seeking partition of community property, the Family Court of East Baton Rouge Parish is the court of proper jurisdiction," rather than the district court. Id.
Following Gerald and Ransome, which favor a broad interpretation of the family court's subject-matter jurisdiction, the First Circuit interpreted the scope of La. Rev.Stat. § 13:1401(A)(2) in Carpenter v. Carpenter to exclude those cases that do not involve a partition of community property or arise from a matrimonial regime. 00-0096 (La.App. 1 Cir. 3/28/01), 797 So.2d 712. In Carpenter, prior to the parties' divorce, a judgment was rendered against the defendant husband, who while in control of assets belonging to his mother's succession had made unauthorized deposits into the parties' community-owned patio furniture business bank account. Carpenter at 2, 797 So.2d at 714. Shortly thereafter, the parties divorced and partitioned their property, but they did not include in the community property settlement the husband's debt to his mother's succession. Id. at 2-3, 797 So.2d at 714. Almost seven years after the termination of the community, the succession obtained a judgment declaring the succession's claim to be a debt of the former community and to be a joint and solidary obligation of the formerly married couple. Id. The plaintiff wife paid the full amount owed under the judgment, and then instituted an action against her former husband in the Nineteenth Judicial District Court, seeking reimbursement. Id. at 3, 797 So.2d at 714. The defendant argued that since this was a claim for reimbursement for her payment of a community debt, it fell within the family court's exclusive jurisdiction over "all actions for the settlement of claims arising from matrimonial regimes." Id. Finding that the issues to be resolved concerned co-debtor obligations and not the classification of community acquets and gains, the First Circuit found that the claims did not constitute actions for claim settlements arising from matrimonial regimes within the meaning of La.Rev.Stat. 13:1401(A)(2). Carpenter at 5, 797 So.2d at 716. In doing so, it also distinguished Carpenter from Gerald and Ransome when it stated:
Both the Ransome and Gerald cases dealt with issues incidental to the parties' marriage. The parties were trying to settle issues between themselves relating to their marriage. Such is not the case here. This matter does not pertain to the classification of property or the determination of responsibility of debts as between the parties. In the case sub judice there is a third party (the succession) seeking satisfaction of a judgment from solidary obligors. One of the obligors paid the obligation in full and is now seeking contribution from the other obligor. The issues to be resolved are not between the former spouses, as such, but as co-debtors obligated to the succession. *44 Carpenter at 5, 797 So.2d at 715-716. Thus, the Gerald case, which involved a contest over community-owned retirement plan proceeds, clearly indicates that cases involving the classification of property as community or separate, like the instant case, fall within the subject-matter jurisdiction of the East Baton Rouge Parish Family Court, while the Carpenter case indicates that claims involving spouses, who are respectively obligated as co-debtors to a third-party creditor, do not fall within the jurisdiction of the family court.
We find the analysis of the First Circuit's three cases (Gerald, Ransome, and Carpenter) helpful in deciding the present exceptions of a lack of subject-matter jurisdiction raised by Mr. Spinosa and the Trust. With this in mind, we assess La. Rev.Stat. § 13:1401(A)(2) as we apply this statute to the facts in the present case.

1. Subject-matter Jurisdiction over Ms. Spinosa's Claims against Mr. Spinosa
First, Mr. Spinosa argues that the family court lacks subject-matter jurisdiction over Mrs. Spinosa's claim that he breached a corporate fiduciary duty and over her claim that he is obligated under the "single business enterprise" theory because the jurisdictional statute for the family court, La.Rev.Stat. § 13:1401(2), limits the court's subject-matter jurisdiction to four distinct actions, and that claims for breach of corporate fiduciary duty or any other action based on a single business enterprise theory are not included. He alleges that Mrs. Spinosa's breach of fiduciary duty and single business enterprise claims do not "relate" to their marriage.
Because Mrs. Spinosa is seeking to settle and/or enforce her rights to community assets, the family court concluded that it had subject-matter jurisdiction over Mrs. Spinosa's claims that Mr. Spinosa operated the community enterprise as a single business enterprise and her allegations that he breached his duty owed to her. The family court judge found that Mrs. Spinosa's claims all arise from the matrimonial regime because all of her claims are based on her position that Mr. Spinosa's actions have deprived her of her rights in community property.
We agree with the family court. Mrs. Spinosa's claims are issues incidental to her former marriage because Mrs. Spinosa alleges the family real estate business was operated during the marriage, and that the community enterprise had never been partitioned, regardless of whether the 1990 matrimonial agreement is determined to be null. As the family court astutely points out in the reasons for judgment, this case is different from Carpenter because "regardless of whether the community terminated on January 10, 1990 (when the judgment and agreement were executed) or on January 10, 2000 (the date Candy Spinosa filed a Petition for Divorce), the parties have never amicably or judicially partitioned their community property." Certainly, the family court has subject-matter jurisdiction to determine whether Mrs. Spinosa is correct in her argument that the assets acquired through this "single business enterprise" are community property. La.Rev.Stat. § 13:1401 provides that the family court has exclusive jurisdiction over community property classifications and the partitioning of community and separate property.
Next, Mr. Spinosa argues that the East Baton Rouge Family Court has no subject-matter jurisdiction over Mrs. Spinosa's action to annul the 1990 judgment because that judgment was issued by the Nineteenth Judicial District Court. He argues that none of the provisions of La. Rev.Stat. § 13:1401 grant the family court subject-matter jurisdiction over Mrs. Spinosa's *45 nullity action because hers is an action based on fraud or ill practices under La.Code of Civ. Proc. art. 2004, not an action "relating to their former marriage." Further, Mr. Spinosa points out that under La. Code of Civ. Proc. art. 2006, an action to annul a judgment for vices of substance must be brought "in the trial court, even though the judgment sought to be annulled may have been affirmed on appeal, or even rendered by the appellate court."[7]
The language of La.Code of Civ. Proc. art.2006 relied upon by Mr. Spinosa has been interpreted to mean that the nullity "action must be brought in the same judicial district court which rendered the judgment sought to be annulled," albeit one of the district court's other divisions. Piper v. Olinde Hardware & Supply Co., Inc., 288 So.2d 626, 629 (La.1974). In Piper, the judgment sought to be annulled by the plaintiff was rendered by a division of the Nineteenth Judicial District Court, and the plaintiff sought to annul the judgment in a different division of the same court. Id. The defendant argued that only the division of the district court that rendered the judgment has jurisdiction to declare the judgment null. Id. This court overruled the defendant's exception, finding that the attacking party need only bring the nullity action in the same district court, not the same division of the district court that rendered the judgment. Id. Thus, the Piper court's holding regarding a court's subject matter jurisdiction over nullity actions focused on the trial court's having jurisdiction rather than on which particular division of a district court had the authority to enter the judgment.
We find that the family court has subject-matter jurisdiction over Mrs. Spinosa's nullity action despite the fact that the 1990 judgment validating the matrimonial agreement was rendered by the Nineteenth Judicial District Court, a Baton Rouge court, which in 1990 but not in 2001, had jurisdiction over matrimonial regimes. Subsequent to the 1990 district court judgment, the law divested the Nineteenth Judicial District Court of subject-matter jurisdiction over matrimonial agreements and actions to partition community property, and gave that jurisdiction to the Family Court of East Baton Rouge Parish.[8] La. Const. art. 5 §§ 16, 18; La.Rev.Stat. 13:1410. Today, the family court continues to possess exclusive jurisdiction over such matters. La. Const. art. § 16(A)(3). The facts of this case are distinguishable from Piper. In Piper, the district court continued to be the court with jurisdiction over the subject matter of the judgment challenged in the nullity action. In contrast, however, the 19th Judicial District Court in the year 2001, when this case was filed, no longer had jurisdiction over the subject-matter of this nullity action of the plaintiff's, in as much as jurisdiction over community property matter by then lay in the family court.
Mrs. Spinosa has filed a petition for partition of community property. As a *46 basis for her claim that certain properties held in the Spinosa Class Trust are, in fact, community property, she alleges that the 1990 judgment was obtained through fraud or ill practices. She is therefore asking the family court to examine the matrimonial agreement, the evidence she presents to establish the circumstances under which the matrimonial agreement was executed, and the documents, such as financial statements that were presented to account for the community's net worth, in order to allow the court to properly classify the property as either community, separate, or neither (the later if the property has properly been placed in the Spinosa Class Trust). Admittedly, Mrs. Spinosa's claims are somewhat more complicated than those involved in the typical community property partition; however, her claims, at least at this juncture in the litigation, only require the family court to determine whether certain properties are community, which is the fundamental question that the family court must first decide when the merits trial is held. Therefore, we conclude that Mrs. Spinosa has properly filed the nullity action in the East Baton Rouge Parish Family Court, today's counterpart to the Nineteenth Judicial District Court regarding community property matters.

2. Subject-matter Jurisdiction over the claims against the Spinosa Class Trust
The Trust argues that the family court's jurisdiction does not extend to claims against third parties, such as the Trust, here. The Trust argues that neither Mr. nor Mrs. Spinosa own the property held in trust and any claim brought against the trust must be brought in district court, not family court. The family court disagreed. That court concluded that Mrs. Spinosa's addition of the Trust as a defendant did not destroy the court's jurisdiction. In reaching this decision, it again relied on La.Rev.Stat. § 13:1401(A)(2)(c), finding that the provisions of the statutory grant of special jurisdiction are not limited to actions "between spouses or former spouses," but extend to all actions within its purview, including Mrs. Spinosa's petition to partition community property, some of which is allegedly held by the Trust. The family court surmised that because Mrs. Spinosa sought recognition of her community property interest in assets held by the Trust (allegedly because her former husband improperly placed them there), then the action against the Trust arises from settlement and enforcement of the matrimonial regime, and is, thus, within its jurisdiction.
Like the plaintiff in Gerald, Mrs. Spinosa is seeking to have recognized her alleged interest in any community property held by the Trust and to enforce her alleged claim to an undivided one-half interest in the trust and/or much of its assets. She is merely seeking to have certain community property allegedly taken by her former husband and improperly deposited in the trust, properly classified as community property. This determination is one that is well within the statutory grant of special subject-matter jurisdiction granted to the family court.
Mrs. Spinosa's petition seeks a partition of community property. Inherent in this partition is the family court's classification of the property and its ability to enforce and settle claims with regard to a matrimonial regime. The Louisiana Civil Code defines a matrimonial regime as a "system of principles and rules governing the ownership and management of the property of married persons as between themselves and toward third persons." La. Civ.Code art. 2325. Because Mrs. Spinosa alleges that Mr. Spinosa used the Trust to divert *47 community assets over which he maintained exclusive control, Mrs. Spinosa is asserting a claim that specifically affects the matrimonial regime. Under Ransome and Gerald, this is clearly a "dispute between former spouses which involved issues related to their marriage." Ransome, 791 So.2d at 123.
While the Trust argues strenuously that the family court does not have jurisdiction over an action between a former spouse and a third party, this argument fails to recognize the specific language of La.Rev. Stat. § 13:1401(2)(c), granting the family court exclusive jurisdiction over "all actions for the settlement and enforcement of claims arising from matrimonial regimes or the establishment thereof." Unlike subsections 2(a) and 2(d) of La.Rev.Stat. § 13:1401, the jurisdiction established by subsection 2(c) over actions for the settlement and enforcement of claims is not limited to actions "between spouses or former spouses."
Further support for our conclusion that the Legislature intended to expand the original and special jurisdiction of the family court to cover claims like those asserted against the Trust is found in the fact that the 1999 Louisiana Legislature repealed La. Rev.Stat. § 13:1415, which following 1997 had granted the family court jurisdiction over matrimonial agreements. That provision was coincidentally repealed and incorporated in the 1999 enacted La.Rev. Stat. § 13:1401, which had previously been limited to "all actions between spouses or former spouses for the settlement and claims arising from a matrimonial regime or the establishment thereof." (Emphasis added). This specific inclusion of the language "between spouses and former spouses" in only two of the four enumerations of jurisdiction set forth in the current version of La.Rev.Stat. § 13:1401, coupled with the exclusion of that very same language in the other two, including subsection (2)(c), evidence the Legislature's intent to include concurrent claims against litigants other than former spouses, such as Mrs. Spinosa's claim against the Trust.
Thus, we conclude that the East Baton Rouge Parish Family Court has jurisdiction over Mrs. Spinosa's effort to determine whether the trust contains assets that are actually community funds improperly diverted by Mr. Spinosa. If it is found that the property she claims is not community, then the family court will no longer have before it claims against the Trust. Following this classification, if the family court concludes that some or all of the assets in the Trust are in fact community property, what will follow in terms of ancillary procedural or substantive remedies will be for the family court to decide.

B. DECLINATORY EXCEPTION OF IMPROPER VENUE
The Spinosa Class Trust raised the declinatory exception of improper venue in this case, in response to Mrs. Spinosa's "Third Supplemental and Amending Petition," which added the Trust as a defendant. According to the Trust, Mrs. Spinosa's claims against the Trust cannot be pursued along with her claims against Mr. Spinosa in East Baton Rouge Parish Family Court because the only proper venue for a claim against the Trust is St. Tammany Parish, the domicile of the sole trustee, Lawrence Randall Spinosa. In support of this argument, the Trust cites La. Rev.Stat. § 9:1725(5), a provision of the Louisiana Trust Code that defines "proper court."
The Family Court of East Baton Rouge Parish and the court of appeal both found non-meritorious this contention of the Trust's that the only proper venue for an action against the Trust is St. Tammany Parish. The decision of both of the lower *48 courts was based primarily on their findings that La.Rev.Stat. § 9:1725(5) applies only to actions "under" the trust code, and that Mrs. Spinosa's action against the trust was not an action under the trust code.
La.Rev.Stat. § 9:1725 at Subsection (5) defines "proper court" in pertinent part, as follows:
Except when the context clearly indicates otherwise, as used in this Code:
* * * * *
(5) "Proper court" in the case of an inter vivos trust means the district court of the parish designated by the settlor, or if no designation is made, the district court of the parish of the trustee's domicile when only one trustee is named. . . .
(Emphasis added.) According to the Trust, no parish was designated by the settlors of the Spinosa Class Trust as the "proper court," and the "sole trustee" is Lawrence Randall Spinosa, Mr. Spinosa's brother, whose domicile is St. Tammany Parish.[9] Thus, the Trust argues, the only proper venue for a suit against the Trust, no matter what the nature of the allegations, is St. Tammany Parish. Accordingly, the Trust argues in this court that the court of appeal erred as a matter of law by affirming the family court's decision overruling the Trust's declinatory exception of improper venue.
In addition to the definition of the phrase "the proper court" set forth in La. Rev.Stat. § 9:1725(5), the Trust seeks to support its exception of improper venue by pointing to La.Rev.Stat. § 9:1724, which states as follows:
The provisions of this Code shall be accorded a liberal construction in favor of freedom of disposition. Whenever this Code is silent, resort shall be had to the Civil Code or other laws, but neither the Civil Code nor any other law shall be invoked to defeat a disposition sanctioned expressly or impliedly by this Code.
The Trust asserts that Ms. Spinosa's claim falls within the actions contemplated by the trust code, and, therefore, that no law outside the trust code, including the general venue provisions, "may be invoked to defeat a disposition sanctioned thereunder."
La.Code of Civ. Proc. art. 41 defines venue as "the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject." The general rules of venue are set forth in La.Code of Civ. Proc. art. 42. However, under the express provisions of La.Code of Civ. Proc. art. 43, those general venue rules are "subject to" the "exceptions" set forth in La.Code of Civ. Proc. arts. 71 through 85 and "as otherwise provided by law." This court has held that the "exceptions" alluded to at La.Code of Civ. Proc. art. 43 (and set forth in La.Code of Civ. Proc. arts. 71 through 85) "are an extension, supplement and legal part" of the general venue provisions set forth in La.Code of Civ. Proc. art. 42. Jordan v. Central Louisiana Elec. Co., Inc., 95-1270, p. 1 (La.6/23/95), 656 So.2d 988, 989, quoting *49 Kellis v. Farber, 523 So.2d 843 (La. 1988).
This court's announcement in Kellis, that the venue rules set forth in La.Code of Civ. Proc. arts. 71 through 85 "are an extension, supplement, and legal part" of the general venue provisions set forth in La.Code of Civ. Proc. art. 42, was a departure from previous decisions, which had held that all of the exceptions to the general venue rules, including those recognized by La.Code of Civ. Proc. Art. 43 and set forth in La.Code of Civ. Proc. arts. 71 through 85, are in derogation of a common right and therefore must be strictly construed. Hawthorne Oil and Gas Corp. v. Continental Oil Co., 377 So.2d 285, 287 (La.1979). Because of that, a party claiming the benefit of one of the exceptions to the general venue rules was required to bring himself "clearly within the exception." Id. The Kellis case explicitly held that the exceptions recognized in La.Code of Civ. Proc. art. 43 and set forth in La. Code of Civ. Proc. art. 71 through 85 are now "an extension, supplement, and legal part" of the general venue rules, and therefore they are no longer "in derogation of common right" and subject to strict construction. However, implicit in the Kellis decision is the unstated fact that "other" exceptions to the general venue rules (i.e., exceptions other than those recognized by La.Code of Civ. Proc. art. 43, which are set forth in La.Code of Civ. Proc. arts. 71 through 85) continue to be "in derogation of common right" and therefore must be strictly construed. Accordingly, in order to carry its burden of proving that Mrs. Spinosa's action against the trust must be filed in the parish of the sole trustee's domicile, the Trust must meet two requirements. First, the Trust must point to an exception to the general venue rules that specifies the parish of proper venue that applies to this case. Second, the Trust must then bring itself "clearly within th[at] exception." Hawthorne Oil and Gas Corp., 377 So.2d at 287.
Considered from that perspective, we find no merit in the Trust's arguments in support of its declinatory exception to venue, because the Trust has not carried its burden of proving even the first of the above requirementsi.e., that there is an exception to the general venue provisions that specifies St. Tammany Parish as the proper venue in this case. The Trust claims that La.Rev.Stat. § 9:1725(5) is a provision that specifies venue in any action against the Trust in the parish of the sole trustee's domicile. However, La.Rev.Stat. § 9:1725(5) does not even mention "venue," much less dictate the court in which claims against the Trust must be filed. Instead, La. Stat. § 9:1725(5) does nothing more than define a term that appears in numerous statutory provisions of the Louisiana Trust Code unrelated to venue.
The lack of merit in the Trust's arguments in this regard is easily demonstrated by review of the specific provisions of the trust code that contain the term "proper court," as defined by La.Rev.Stat. § 9:1725(5).[10] Our review reveals that virtually all of those provisions fall under specific parts of the trust code related to administrative matters, such as creation, modification, and termination of trusts, or to duties and powers of trustees. Rather than dictating that actions against the Trust be filed in the "proper court," the provisions containing that term simply *50 grant certain powers to and/or impose certain obligations on the "proper court."
Just as significant to our interpretation of the term "proper court" in the multiple statutory provisions that use the term are certain other statutes that do not use the term "proper court." Significantly, La. Rev.Stat. § 9:2126, which governs "Tort liability of trust," does not contain the term "proper court." Although that provision contemplates a suit against trustees who have incurred personal liability for a tort committed in the course of administration of the trust, nothing in that provision requires that the claim be filed in the "proper court," or in any other designated venue. The same is true of La.Rev.Stat. § 9:2125, which governs "Contractual liability of trust." That provision contemplates a cause of action against a trustee arising from a contract, but does not require that such an action be filed in a "proper court," or any other court.
Ultimately, as we have previously stated, Mrs. Spinosa's claim in this case, at least at this juncture, constitutes an action to partition community property. At this stage of the proceeding, the salient question regarding the Trust is whether any part of the assets being held by the Trust is actually community property. The trust code contains no express provision concerning the proper court to entertain an action to partition community property. In fact, even if La.Rev.Stat. § 9:1725(5) were meant to be a venue provision, as the Trust argues, that phrase simply does not appear in any article that mentions community property generally or the partitioning of community property specifically, nor in any statutory provision related to a third-party action against the trust or trustee.
As the Trust itself notes, La.Rev.Stat. § 9:1724 provides expressly that in situations in which the Trust code is silent, "resort shall be had to the Civil Code or other laws." The general venue rules contain an express provision regarding venue for an action to partition community property. Specifically, La.Code of Civ. Proc. art. 82 provides, in pertinent part, as follows
A. Except as otherwise provided in this Article, an action to partition community property and to settle the claims between the parties arising from either a matrimonial regime or from co-ownership of former community property shall be brought either as an incident of the action which would result in the termination of the community property regime or as a separate action in the parish where the judgment terminating the community property regime was rendered.
Under La.Code of Civ. Proc. art. 82(A), venue is proper in this "action to partition community property and to settle the claims between the parties arising from either a matrimonial regime or from co-ownership of former community property" in East Baton Rouge, which is the "parish where the judgment terminating the community property regime was rendered" (i.e., the judgment of divorce). Thus, the court of appeal correctly found that venue is proper in East Baton Rouge Parish Family Court under La.Code of Civ. Proc. art. 82.[11] Accordingly, the Trust's exception of improper venue has no merit.
*51 In sum, we conclude that the Family Court of East Baton Rouge Parish has subject matter jurisdiction over Mrs. Spinosa's petition to partition community property and the suit was not in an improper venue.

DECREE
The judgment of the court of appeal overruling the defendants' exceptions of subject-matter jurisdiction and venue are hereby affirmed. The case is remanded to the Family Court of East Baton Rouge Parish for such further proceedings as the parties deem necessary and not inconsistent with this opinion.
AFFIRMED; REMANDED TO THE FAMILY COURT.
NOTES
[*] Judge Dennis R. Bagneris, Sr., assigned as Associate Justice Ad Hoc, for Associate Justice Chet D. Traylor, recused.
[1] At the time of the 19th Judicial District Court entered the 1990 judgment, the East Baton Rouge Family Court did not have jurisdiction over the settlement and enforcement of claims arising from matrimonial regimes. Under 1990 La. Acts No. 1009, the 19th Judicial District Court continued to have jurisdiction over such claims.
[2] The validity of the January 10, 1990 matrimonial agreement and judgment is contested; however, the merits of this issue are not before this court at this time.
[3] Ms. Spinosa alleges that Mr. Spinosa has told her that her share of the property is worth only $435,407.00.
[4] Mr. Spinosa and the Spinosa Class Trust raised the pretermitted exceptions of no cause of action, no right of action, failure to join an indispensible party, and prescription. In addition, we do not address the family court's treatment of peremption as this may be further explored after evidence is presented at trial. Peremption may be pleaded or it may be supplied by a court on its on motion at any time prior to final judgment. La. Civ.Code art. 3460.
[5] For support, Mr. Spinosa relies on a holding of the First Circuit in a later case between the same parties. The First Circuit held that the East Baton Rouge Parish Court did not have subject-matter jurisdiction in a separate action filed one year later after its 2001 opinion in Ransome. In that case, the plaintiff instituted a garnishment proceeding against the former husband's attorney, representing the former husband's estate, after the First Circuit rendered a judgment in favor of the plaintiff for $4,588,284.50 with interest, court costs, and $50,000.00 in attorney's fees. Ransome v. Ransome, 01-2361, p. 3 (La.App. 1 Cir. 6/21/02), 822 So.2d 746, 750. With regard to this action, the First Circuit held that the family court lacked jurisdiction over the plaintiff's garnishment action against the attorney, finding that it was an action between a former spouse and a third party and that it was a separate and distinct proceeding from the original suit and was between different parties. Id. at 6-7, 822 So.2d at 753, and Id. at 9-10, 822 So.2d at 755.
[6] In so doing, it emphasized the language amended by the Legislature in 1999. Prior to the 1999 amendment, the Legislature had granted the family court exclusive jurisdiction over partitions for community property under limited circumstances. Before the amendment, La.Rev.Stat. § 13:1401 provided in pertinent part:

A. There is hereby established the family court for the parish of East Baton Rouge, which shall be a court of record with exclusive jurisdiction in the following proceedings:
* * * *
(2) All actions for partition of community property and for the settlement of claims arising from matrimonial regimes, when such actions arise as a result of divorce or annulment of marriage. The Nineteenth Judicial District Court for the parish of East Baton Rouge, however, shall have jurisdiction of proceedings involving partition of community property and the settlement of claims arising from matrimonial regimes when they do not arise as a result of divorce or annulment of marriage.
1993 Acts. No. 485. The 1999 amendment, however, granted the Family Court of East Baton Rouge Parish exclusive jurisdiction over all actions for partition of community property regardless of whether it arises as a result of divorce or an annulment of marriage. That 1999 amendment remains in effect and applies in this case.
[7] The family court did not address whether Mrs. Spinosa filed the nullity action in the proper court under La.Code of Civ. Proc. art. 2006 because this issue was not raised by Mr. Spinosa in his declinatory exception. Rather, the issue was raised by Judge Downing in his dissent to the First Circuit's majority opinion.
[8] La.Rev.Stat. § 13:1401 was amended in 1999 to its present state, which provides exclusive jurisdiction to the East Baton Rough Parish Family Court over all "actions between spouses or former spouses for partition of community property and property acquired pursuant to a matrimonial regime." 1999 La. Acts No. 533. Prior to the 1999 amendment to La.Rev.Stat. § 13:1401, both the Nineteenth Judicial District Court and the East Baton Rouge Parish Family Court had authority to exercise jurisdiction over actions for partition of community property.
[9] The family court noted in its reasons that, while the Trust in its memorandum to the family court asserted that St. Tammany Parish is the sole trustee's domicile, it did not present any record evidence of that fact. Further, the family court noted that the trust instrument itself seems to indicate that Lawrence Randall Spinosa was domiciled in Orleans Parish at the time the Trust was executed on May 17, 1988. Given our conclusion herein that venue is proper in East Baton Rouge Parish family court under La. C.C.P. art. 82, it is unnecessary for us to consider whether the Trust sufficiently proved Lawrence Randall Spinosa's domicile.
[10] The term "proper court" appears in the following sections of La.Rev.Stat. Title 9, the Louisiana Trust Code: 1785, 1786, 1787, 1789, 1824, 1831, 2005, 2026, 2027, 2064, 2065, 2066, 2067, 2088, 2112, 2113, 2160, 2162, 2171, 2172, 2173, 2182, 2208, 2222, and 2233.
[11] The court of appeal also indicated that venue is proper in this case in East Baton Rouge Parish under the provisions of La.Code of Civ. Proc. arts. 42, 45, and 73. However, because we have found that venue is proper in East Baton Rouge Parish under the provisions of La.Code of Civ. Proc. art. 82, it is unnecessary for us to consider whether venue is also proper there under the other articles cited by the court of appeal.