961 So.2d 394 (2007)
Doug WELBORN, in his Official Capacity as Clerk of Court for East Baton Rouge Parish
v.
The 19TH JUDICIAL DISTRICT COURT and The East Baton Rouge Parish Family Court.
No. 2006 CA 2307.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
*395 Sheri M. Morris, Jeffrey K. Cody, Shows, Cali, Berthelot & Morris, L.L.P., Baton Rouge, for Plaintiff-Appellee Doug Welborn, in his capacity as Clerk of Court for East Baton Rouge Parish.
Charles C. Foti, Jr., Attorney General, David G. Sanders, Patricia H. Wilton, Assistant Attorney Generals, Baton Rouge, for Defendants-Appellants The 19th Judicial District Court.
Charles C. Foti, Jr., Attorney General, Van A. Heard, W. Wayne Gaudin, Jr., Assistant Attorney Generals, Baton Rouge, for Defendants-Appellants The East Baton Rouge Parish Family Court.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
In this suit for declaratory judgment, Doug Welborn, who serves as the Clerk of Court for East Baton Rouge Parish (the Clerk of Court), sought clarification of the subject-matter jurisdiction of the Nineteenth Judicial District Court (the 19th JDC) vis-à-vis the East Baton Rouge Parish Family Court (the Family Court) in actions brought under the Domestic Abuse Assistance Act and/or the Protection from Dating Violence Act when the victim of violence is a "dating partner" or unrelated "household member" of the person against whom acts of abuse are alleged. From a judgment declaring that both courts have concurrent subject-matter jurisdiction over such matters, both courts have appealed. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
In 1979, the Louisiana legislature enacted the "Protection from Family Violence Act," LSA-R.S. 46:2121, et seq., to provide community shelters and social services to victims of family violence. In 1982, those protections were enhanced and expanded with the passage of the "Domestic Abuse Assistance Act," LSA-R.S. 46:2131, et seq., which provided easily accessible civil remedies for domestic violence between family members or household members. The genesis for this lawsuit was legislation enacted in 2001 that extended the services available under these statutes to "dating partners."[1] In response to that legislation, the Family Court executed an en banc order on September 14, 2001, declaring that it lacked subject-matter jurisdiction to hear petitions filed by "dating partners" seeking relief pursuant to the Protection from Dating Violence Act. This was followed, on January 14, 2004, with a second en banc order declaring the Family Court also lacked subject-matter jurisdiction over petitions brought by "household members," as those persons are defined in LSA-R.S. 46:2132(4). In both cases, *396 the Family Court based these orders on the jurisdictional parameters of LSA-R.S. 13:1401, which grants exclusive jurisdiction to the Family Court for actions involving marital and parent/child legal relationships, categories into which neither dating partners nor unrelated household members fit.
Not long after this second en banc order, a woman whose "dating partner" was allegedly abusing her filed a petition in the 19th JDC, seeking protection under the subject statutes. The defendant filed a peremptory exception raising the objection of lack of subject-matter jurisdiction, which the district court judge sustained. Since the Family Court had refused to hear such cases, and the 19th JDC had ruled that it had no subject-matter jurisdiction over her petition, the plaintiff was left without any remedy at law. She filed an application for an emergency supervisory writ with this court, which granted the writ, reversed the ruling of the district court judge, and remanded the case for further proceedings, stating that the 19th JDC had concurrent jurisdiction with the Family Court over such claims. See Collins v. Jack, 05-0745 (La.App. 1st Cir.4/13/05) (unpublished writ action).
Following this writ action, the Chief Judge of the 19th JDC ordered the Clerk of Court to randomly allot such cases among the civil judges of the 19th JDC and the judges of the Family Court. The Clerk of Court initiated such random allotment, but the Family Court continued to refuse these cases on the grounds that such matters were not proceedings "appropriate to" the Family Court, because they were not brought by family members. After various legal maneuvers that left the Clerk of Court in a quandary concerning how to allot such cases, he filed this suit against the 19th JDC and the Family Court, seeking a declaratory judgment regarding the proper method of allotting petitions from "dating partners" or "household members" seeking relief from domestic violence. All the 19th JDC judges recused themselves, and an ad hoc judge, retired Judge Don Aaron, Jr., was appointed by the Louisiana Supreme Court to handle the case.
In a supplemental and amending answer, the Family Court acknowledged the writ action of this court, but averred that because the Family Court was not a party to that action and the decision was not published, the writ action was not binding precedent. In oral argument at the trial of the case, the 19th JDC agreed that this court's writ action was not binding, but was "persuasive authority." The ad hoc judge handling the case apparently was persuaded by this court's conclusion, as he agreed that the Family Court and the 19th JDC had concurrent jurisdiction over actions brought by "household members" and "dating partners" seeking relief from domestic violence and abuse. A judgment to that effect was signed on September 4, 2006.
Both the 19th JDC and the Family Court filed suspensive appeals. The 19th JDC claims the Family Court has exclusive jurisdiction over all domestic violence claims, including those of "household members" and "dating partners."[2] The Family Court argues that the ad hoc judge erred in decreeing that it had any subject-matter jurisdiction over claims brought by such parties. The Clerk of Court takes no position on the issue, but merely seeks definitive *397 guidance from this court so that random allotment can be accomplished properly and expeditiously.

APPLICABLE LAW
The Louisiana Constitution grants original jurisdiction of all civil and criminal matters to the district courts, except as otherwise authorized by the constitution. See LSA-Const. art. V, § 16(A).[3] Section 18 of Article V states that "Notwithstanding any contrary provision of Section 16 of this Article, juvenile and family courts shall have jurisdiction as provided by law."
In 1975, pursuant to LSA-Const. art. XIV, § 16, the Louisiana legislature incorporated former Section 53 of Article VII of the Constitution of 1921 into the Revised Statutes as part of LSA-R.S. 13:1401 through 1409.[4] This legislation continued the existence of the Family Court as a statutory court with exclusive jurisdiction over a number of legal actions, including divorce, annulment of marriages, establishment or disavowal of paternity, spousal and child support, and custody and visitation of children, as well as other matters incidental to such proceedings. See LSA-R.S. 13:1401(A). In addition, subsection B of LSA-R.S. 13:1401 currently states: "The family court for the parish of East Baton Rouge has all such additional jurisdiction, power, and authority not or hereafter provided by law." This wording of what is now subsection B was included in the statute when its provisions were amended and re-enacted by 1990 La. Acts, No. 158, § 1, effective July 1, 1990.
The Protection from Family Violence Act was enacted in 1979 for the purpose of reducing serious and fatal injuries to the victims of family violence and making available to them necessary services, including shelter, counseling, and referrals to social services, medical care, and legal assistance.[5] Its protections were available to "family or household members," defined as spouses, parents, children, stepparents, stepchildren, foster parents, foster children, and grandparents or their grandchildren. LSA-R.S. 46:2121.1(1). There is no separate definition of "household members" in this statute. This act authorized the creation of community-based shelters and other services for victims of family violence. LSA-R.S. 46:2122-2128. The act did not provide any enforcement mechanism through the courts, nor is there any jurisdictional statement in it.
The Domestic Abuse Assistance Act,[6] enacted in 1982, recognized that the complex legal and social problems created by domestic violence were not adequately addressed in the laws regulating the dissolution of marriage and that the policies and practices of law enforcement agencies and prosecutors "resulted in different treatment of crimes occurring between family or household members and those occurring between strangers." LSA-R.S. 46:2131. This act defined domestic abuse as physical or sexual abuse and any offense against the person committed by one family or household member against another. LSA-R.S. 46:2132(3). It defined "family members" *398 as spouses, former spouses, parents and children, stepparents, stepchildren, foster parents, and foster children; "household members" were separately defined as any person of the opposite sex presently or formerly living in the same residence with the defendant as a spouse, whether married or not, seeking protection under the act. LSA-R.S. 46:2132(4). Louisiana Revised Statute 46:2133(A) states: "Any court in the state of Louisiana which is empowered to hear family or juvenile matters shall have jurisdiction over proceedings appropriate to it under this Part." This act provides victims of abuse with a simple civil process for obtaining temporary restraining orders, speedy hearings, protective orders, and other legal relief designed to protect them from domestic violence. LSA-R.S. 46:2133-2135.
The Protection from Dating Violence Act, enacted in 2001, defines "dating partner" as any person who is or has been in a social relationship of a romantic or intimate nature with the victim, where the existence of such a relationship can be determined by evaluating certain objective factors delineated in the statute. LSA-R.S. 46:2151(B). This act provides to "dating partners" all of the services, benefits, and other forms of assistance available under Chapter 28 of Title 46 of the Revised Statutes, which includes LSA-R.S. 46:2121, et seq. and LSA-R.S. 46:2131, et seq. While this act does not describe the forms of relief available or designate which court or courts are to have jurisdiction over such claims, it incorporates by this reference all of the provisions of the other sections. Accordingly, subject-matter jurisdiction over such claims is granted by LSA-R.S. 46:2133(A) to any court in this state that is empowered to hear family or juvenile matters; such a court shall have jurisdiction over proceedings "appropriate to it" under LSA-R.S. 46:2131, et seq.
Pursuant to the standard rules for statutory construction: (1) it is presumed that every provision of law was intended to serve some useful purpose; (2) it is not presumed that the lawmaker intended for any part of a law to be meaningless; (3) the lawmaker is presumed to have enacted the law with full knowledge of all other laws pertaining to the same subject matter; (4) it is the duty of the courts to interpret a provision of law which harmonizes and reconciles it with other provisions pertaining to the same subject matter; and (5) when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory. Ransome v. Ransome, 01-2361 (La.App. 1st Cir.6/21/02), 822 So.2d 746, 754.

ANALYSIS
The Louisiana Constitution provides original jurisdiction of all civil and criminal matters to the district courts. See LSA-Const. art. V, § 16. Exceptions to that jurisdiction must be specified in other constitutional provisions or statutes. Article V, Section 18 provides one of those exceptions by stating that juvenile and family courts "shall have jurisdiction as provided by law." In other words, the constitution gives the legislature the authority to determine the limits of the jurisdiction of juvenile and family courts. One statutory enactment pursuant to this article is LSA-R.S. 13:1401, which in subsection (A) grants the Family Court exclusive jurisdiction over certain matters delineated in the statute, and in subsection (B) grants it "all such additional jurisdiction, power, and authority now or hereafter provided by law." Thus, while subsection (A) specifies certain matters over which the Family Court is to have exclusive jurisdiction, it does not limit *399 the court to those matters only. Rather, the expansion of the Family Court's jurisdiction is authorized and anticipated by subsection (B).
This court has recognized several instances in which the Family Court's jurisdiction was expanded by later legislative enactments to include matters other than those originally described in LSA-R.S. 13:1401(A). See Ransome v. Ransome, 99-1291 (La.App. 1st Cir.1/21/00), 791 So.2d 120, 123;[7]Gerald v. Gerald, 99-1328 (La.App. 1st Cir.6/23/00), 762 So.2d 1241, 1242. The legislative expansion of the Family Court's jurisdiction was also the subject of the Louisiana Supreme Court's decision in Spinosa v. Spinosa, 05-1935 (La.7/6/06), 934 So.2d 35, 41-47. While none of these cases addresses the particular issue before us in this case, all recognize that the jurisdiction of the Family Court is not limited by the particular types of actions described as exclusive to that court in LSA-R.S. 13:1401(A), but can be expanded by legislative acts to include subject-matter jurisdiction over other matters. See also Boudreaux v. Boudreaux, 93-0951 (La.App. 1st Cir.5/5/95), 655 So.2d 465, 468, writ not considered, 95-1444 (La.9/22/95), 660 So.2d 468 (recognizing the recent trend toward expansion of the jurisdiction of the family courts, as evidenced by constitutional and statutory amendments); Wooley v. State Farm Fire & Cas. Ins. Co., 04-0882 (La.1/19/05), 893 So.2d 746, 761-62 (stating the legislature is permitted to enact any legislation the state constitution does not prohibit).
In Ransome, 822 So.2d at 753, this court determined that the Family Court did not have jurisdiction over a garnishment proceeding brought by the former wife against her former husband's attorney, because such action was not incidental to the main demand, was a separate and distinct proceeding from the original suit, was not a garnishment "for spousal or child support and attorney fees," and was not an action "between former spouses," as the statute required, but was between a former spouse and a third party.[8] This court stated that "there are no other provisions in law that give the [F]amily [C]ourt jurisdiction over the execution of its judgments through garnishment against a third party." Ransome, 822 So.2d at 755. Unlike that case, in which garnishment proceedings against third parties were not mentioned in any legislative grants of subject-matter jurisdiction, the matter before us involves unrelated "household members" and "dating partners," both of whom are, for certain domestic violence actions, specifically described and defined in other provisions of law as falling within the jurisdiction of any court in this state empowered to hear family or juvenile matters. The Family Court is empowered to hear family matters. Therefore, jurisdiction over actions for relief from domestic violence brought by unrelated "household members" or "dating partners" is specifically *400 added to the Family Court's jurisdiction.
The Family Court argues that its jurisdiction is limited by LSA-R.S. 13:1401(A) to "family members." Therefore, the addition of claims brought by unrelated "household members," as defined in LSA-R.S. 46:2132(4), and by "dating partners," as defined in LSA-R.S. 46:2151(B), is not authorized, because these matters are not "appropriate to it," as required by LSA-R.S. 46:2133(A). We are not persuaded by this argument. Rather, as was brought out in oral arguments before this court, we conclude that the words "appropriate to it" in this jurisdictional statement refer to age-related distinctions between family courts and juvenile courts. We note also that LSA-R.S. 13:1401(B) is not limited in scope. It does not confine the Family Court's additional jurisdiction to matters "appropriate to it," but grants it "all such additional jurisdiction, power, and authority now or hereafter provided by law." If this court accepted the Family Court's argument in this case, we would render meaningless the provisions of the statutes specifically defining "household members" and "dating partners" and granting them the right to seek relief from domestic violence in courts empowered to hear family matters. We conclude, therefore, that the Family Court does have subject-matter jurisdiction over domestic violence claims by "household members," as defined in LSA-R.S. 46:2132(4), and by "dating partners," as defined in LSA-R.S. 46:2151(B).
The remaining question for this court is whether the Family Court's subject-matter jurisdiction over such cases is exclusive, or whether it is concurrent with the 19th JDC. As previously noted, the 19th JDC has original jurisdiction over all civil and criminal matters, unless some constitutional or statutory provision removes that power and grants it to another court. LSA-Const. art. V, § 16. Louisiana Revised Statute 13:1401(A) is such a provision, because it assigns exclusive jurisdiction over certain specified types of claims to the Family Court, thus divesting the 19th JDC of jurisdiction over such actions.
In contrast to the grant of exclusive jurisdiction in subsection 1401(A), the other statutes we are reviewing do not specify that the jurisdiction assigned therein is exclusive. The Domestic Abuse Assistance Act states in LSA-R.S. 46:2133, "Any Louisiana court that is empowered to hear family or juvenile matters shall have jurisdiction over proceedings appropriate to it under this Part" (emphasis added), which includes actions brought by unrelated "household members." And the Protection from Dating Violence Act, while it does not include a specific grant of jurisdiction, provides to "dating partners" all of the services, benefits, and other assistance available under Chapter 28 of Title 46 of the Revised Statutes, which includes LSA-R.S. 46:2131, et seq. Of those provisions, only LSA-R.S. 46:2133 has a jurisdictional statement.
We conclude that the words "shall have jurisdiction" in LSA-R.S. 46:2133 do not have the same connotation as the words "shall be a court of record with exclusive jurisdiction," as stated in LSA-R.S. 13:1401(A). Clearly, when the legislature exercises its constitutional authority to divest a district court of jurisdiction over certain matters and assign those matters to another court or courts, it does so by using the word, "exclusive." Neither the Domestic Abuse Assistance Act nor the Protection from Dating Violence Act uses the word "exclusive" in assigning authority to the Family Court over the types of claims described therein. While the word "shall" in a statute is mandatory, mandatory does not have the same meaning as *401 "exclusive." Therefore, the 19th JDC was not divested of its authority in domestic violence cases by the provisions of LSA-R.S. 46:2133. Accordingly, we hold that the 19th JDC has concurrent jurisdiction with the Family Court over such matters.

CONCLUSION
The judgment of September 4, 2006, is affirmed. All costs of this appeal, in the amount of $680.00, are assessed equally to the Family Court and the 19th JDC.
AFFIRMED.
NOTES
[1] The "Protection from Dating Violence Act" was enacted by 2001 La. Acts, No. 1180, § 1, and is found at LSA-R.S. 46:2151.
[2] The 19th JDC pleads, in the alternative, that if this court finds that jurisdiction in these matters is not vested solely with the Family Court and the juvenile court for East Baton Rouge Parish, then jurisdiction in its court is concurrent with that of the Family Court and the juvenile court.
[3] This constitutional article also includes certain other exceptions to the jurisdiction of, and grants of jurisdiction to, the district courts; however, these are not relevant to this case.
[4] See 1975 La. Acts, No. 89, § 1. This statute was later amended to also grant exclusive jurisdiction for actions for partition of community property and the settlement of claims arising from matrimonial regimes as a result of divorce or annulment of marriage.
[5] LSA-R.S. 46:2121, et seq., was added by 1979 La. Acts, No. 746, § 1.
[6] LSA-R.S. 46:2131, et seq., was added by 1982 La. Acts, No. 782, § 2.
[7] Note that this opinion cites two different Ransome cases in which different jurisdictional decisions were made on the basis of different statutes. See Ransome, 791 So.2d 120 and Ransome, 822 So.2d 746.
[8] We note, however, that this factor did not deprive the Family Court of jurisdiction over a former spouse's action against a trust into which she averred her former husband had fraudulently diverted community funds during the marriage without her permission. See Spinosa, 934 So.2d at 46-47. The difference is that the Ransome case involved a specific limitation of authority for enforcement of judicial determinations "between former spouses" and garnishments for spousal and child support and attorney fees only, thereby restricting the Family Court's jurisdiction in such cases. See LSA-R.S. 13:1401(A)(1) and (2).